### STOKES et al. v. PASCHALL et al.
### (No. 10074.)

(Court of Civil Appeals of Texas. Fort Worth. April 15, 1922. Rehearing Denied May 27, 1922.)

1. **Highways ⬅90—Offer to find purchaser for bonds and acceptance by commissioners held not to be a sale.**

Where, after authorization of an issue of bonds of a road district, a proposition was submitted to the commissioners' court to find a purchaser for the bonds at par and accrued interest, for which the commissioners were to pay $13,800 at the time of the delivery of the bonds in consideration of services rendered and to be rendered, and expenses incidental to issuance and sale, which proposition was accepted by the county judge and the acceptance indicated by an order entered in the minutes of the commissioners' court, it could not be said that the county made a sale, the proposition not being a proposition to buy, but simply to find a purchaser.

2. **Contracts ⬅24—To constitute a contract proposition must be accepted in terms in which made.**

To constitute a contract a proposition must be accepted in the very terms in which it was made.

3. **Words and phrases—"Issue" as verb means to send out.**

Among definitions of the term "issue" when used as a verb is: "To send out, to send out officially; to send forth; to put forth; to deliver, for use, or authoritatively; to put into circulation; to emit; to go out; to go forth as authoritative or binding."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Issue.]

4. **Highways ⬅90—Commission to broker an "expense incident to the issuance" of bonds.**

Where a commissioners' court in the exercise of sound discretion finds it to be reasonably necessary to employ bond brokers to aid

in the sale of bonds of a road district, they may do so, and, under Rev. St. art. 632, as amended by Acts 1917, c. 203, § 1 (Vernon's Ann. Civ. St. Supp. 1918, art. 632), they may lawfully pay a reasonable commission out of the proceeds of the bonds so sold, the commission being an expense "incident to the issuance" of the bonds within the meaning of the amendment.

5. **Highways ⬅90—Unreasonable brokerage fee not allowed as indirect method of selling bonds below par.**

The authority of Rev. St. art. 632, as amended by Acts 1917, c. 203, § 1 (Vernon's Ann. Civ. St. Supp. 1918, art. 632), cannot be extended so as to permit the commissioners' court to contract for and pay out of the proceeds of bonds of a road district an unreasonable and exorbitant brokerage fee as an indirect method of selling the bonds at less than their par value with accrued interest.

6. **Highways ⬅90—Evidence held to show that brokerage fee on bond issue was an indirect means of issuing bonds at less than par.**

Evidence held to show that the brokerage fee of $13,800 on $150,000 bond issue was allowed as an indirect means of enabling the commissioners' court to sell the bonds at less than their par value and accrued interest.

7. **Highways ⬅90—Legislature not without power to limit amount of interest on bonds of road district.**

The Legislature is not without power under Const. art. 3, § 52, to limit the amount of interest that could be allowed on bonds of a road district.

8. **Parties ⬅32—All parties interested necessary to final determination.**

All parties interested in the subject-matter of an action are necessary to its final determination.

Appeal from District Court, Wise County; F. O. McKinsey, Judge.

Action for injunction by J. J. Stokes and others against W. D. Paschall and others. From judgment for defendants, plaintiffs appeal. Reversed and remanded.

McMurray & Gettys, of Decatur, for appellants.

M. W. Burch, of Decatur, for appellees.

CONNER, C. J. J. J. Stokes and a number of other taxpaying citizens and residents of Wise county, Tex., instituted this suit to enjoin what is termed a sale of $150,000 of road bonds of road district No. 2 in said county. Except as hereinafter noted, it is undisputed that road district No. 2, situated in the northwest corner of Wise county, was regularly established and laid out, and that thereafter and therein an election was regularly ordered and conducted, at which the commissioners' court of Wise county was, by the vote of the district, authorized to

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

issue and sell $150,000 of bonds for the district, with the proceeds of which macadamized roads might be constructed. All of the petitioners, save possibly two—T. H. Lumsden and J. H. Redwine—are resident citizens and qualified voters and owners of the lands in the district named, and this suit was instituted to restrain the sale or proposed sale of the bonds in the manner set out. The plaintiffs alleged that the commissioners' court and members thereof, naming them, had proposed to sell said bonds to Breg, Garrett & Co., a partnership doing business in Dallas, Tex., for 91.65 cents on the dollar, or for $139,575, which was $13,800 less than par; that the commissioners' court is making a pretense of selling said bonds at par and allowing $13,-800 to be deducted by the purchaser to cover pretended costs of printing the bonds, legal opinion of the purchaser's attorneys, and other expenses pretended to be incident to the issuance of the bonds; that the expense of printing the bonds could not be over $150 or $200, and all the other amount was included as a mere pretense to evade the statute and laws requiring that such bonds be sold for not less than par; that, in any event, the said $13,800 includes discounts, and is not allowed in any manner authorized by law, in that it is proposed to be allowed by the court without determining what items it consisted of, or the reasonableness thereof; that said commissioners' court has proposed to make a pretended agency arrangement in such manner as to make a pretense of allowing a pretended agent or broker a commission of approximately $13,800, and allow such pretended agent to juggle the $13,800 with a purchaser in such manner as to make an appearance of selling said bonds at par when in fact no such sale was being made, and when the amount proposed to be received for the entire $150,000 of bonds was only $139,575, including accrued interest; that the said proposal or arrangement with Breg, Garrett & Co., while in form a pretended employment of said firm to sell said bonds, was understood to be a sale of the said bonds to said firm, and will be perverted into and consummated as such sale of the bonds to them for $13,800 less than par unless said members of the commissioners' court are restrained by injunction, and the plaintiffs, as taxpayers of said road district, will be required to pay said bonds in full, including the $13,800, for which they get no benefit, and will thus be subjected to taxes for a purpose not authorized by law.

The defendants, the county judge and members of the commissioners' court of Wise county, filed their answer, alleging in detail the preparation, signing, and presentment of the petition for said road district No. 2 to be defined and established and for the bond election; that such election was ordered and was held, and the result thereof; and also the various orders made by the court relative to the result and the issuance of the bonds; that said court thereupon advertised for bids for said bonds, and, after giving the matter wide publicity, it was found that they were unable to find a purchaser for said bonds at par, and found it absolutely necessary to employ an agent or broker and obligate themselves or the said road district to pay such agent or broker a commission out of the proceeds of the sale of said bonds in order to effect a sale at par; that they thereupon got in communication with certain specified brokers, who appeared and bid for the privilege of selling the bonds at par; "that all of said individuals and firms demanded of said court that they or their respective firms be paid a commission on the sale of said bonds for the finding of a purchaser who would pay for said bonds par and accrued interest thereon"; that said Breg, Garrett & Co. were the best bidders on the said proposition of finding a purchaser at par and accrued interest, their demand being an allowance of $13,-800, and same was accepted by the commissioners' court, said court agreeing that it would pay the $13,800 out of the general fund of the county, intending thereafter to reimburse the county out of the proceeds of the sale of the bonds. The defendants' answer also contained a general and special denial and the following further special plea:

"Defendants further say that the issuance and sale of said bonds were expressly authorized by article 3, § 52, of the Constitution of the state of Texas, and that article 632 of the Revised Statutes of Texas, as amended by Acts of the Legislature of 1917, p. 463, is in conflict therewith, especially in so far as the Legislature attempts to fix the price for which said bonds shall sell; that said Legislature was without authority to provide that said bonds should not be sold for less than par value, that being a matter within the discretion of the commissioners' court, and said statute is to such extent illegal and void."

The cause was tried on December 30, 1921, before the court on its merits, without a jury, and the court rendered judgment denying to plaintiffs any and all relief, refusing either to enjoin the sale absolutely or to enjoin the disposition of the bonds under the proposals shown to have been made with Breg, Garrett & Co. Plaintiffs have duly appealed from the judgment so rendered.

It is first contended that at all events relief should have been granted to the appellants T. H. Lumsden and J. H. Redwine, in that the evidence shows that they were residents of and legal voters in the Alvord voting precinct, and not properly included within the established boundaries of road district No. 2. There was evidence which authorized the conclusion that, at the time of the filing of the petition for the formation

of the road district No. 2, field notes of its boundaries were prepared and attached to the petition; as shown by the boundaries thus designated, these two appellants are situated within road district No. 2, and within the Chico voting precinct. Their contention is based upon evidence tending to show that prior to the formation of the road district No. 2 the commissioners' court so changed the west boundary line of the Alvord voting precinct as to include these appellants. We have carefully considered the evidence relating to this contention, but find it unsatisfactory. It cannot, we think, be determined with certainty from the evidence either that the change by the commissioners' court purporting to include these appellants in the Alvord district was regularly made, or, if so, whether these particular appellants actually reside within the limits changed from the Chico to the Alvord precinct. We therefore feel unable to reverse the judgment on this ground, but, inasmuch as we have concluded that the judgment must be reversed upon grounds hereinafter stated, we leave the issue open for further determination.

[1, 2] The evidence shows that after the authorization of the issuance of the bonds the commissioners' court of Wise county, by advertising and otherwise, made the effort to procure a purchaser for the bonds at par and accrued interest, and were unable to do so. But on December 2, 1921, the following proposition was submitted to the court:

"The City National Bank of Decatur, Texas. Capital and Surplus $150,000.00. Decatur, Texas, December 2, 1921. To the Hon. Judge W. D. Paschall and County Commissioners, Wise County, Texas, Decatur, Texas—Gentlemen: For your $150,000 legally issued road bonds of road district No. 2, Wise county, Texas, dated October 10th, 1921, bearing 5½ per cent. interest payable semiannually, both principal and interest payable at the Hanover Nat. Bank, New York City, denomination $1,000, and maturing as follows: $3,000, each year from the first to the tenth year both inclusive, $5,000, each year from the 11th to the 20th year both inclusive, and $7,000, each year from the 21st year—we hereby agree to find you a purchaser for said bonds at par and accrued interest, to December 10, 1921, subject to the following conditions: (1) You are to furnish us immediately with complete certified copy of transcript of proceedings covering said issue and evidencing the legality of same to the satisfaction of Wood & Oakley of Chicago or some other recognized bond attorney. (2) For and in consideration of services rendered and to be rendered and to cover costs of printing, legal opinion, etc., you are to pay us out of the general fund at the time of delivery of bonds the sum of $13,800.00. Respectfully submitted. City National Bank, Decatur, Texas, by S. A. Lillard, Jr., Vice Pres., Bidding for Breg, Garrett & Co., Dallas, Texas.

"Accepted this the 2d day of December, 1921.

W. D. Paschall, County Judge in and for Wise County, Texas."

On the same day, as evidenced by the order entered upon its minutes, the commissioners' court indicated its acceptance of the foregoing proposition in the following words:

"Dec. 2, 1921. At this time came on to be received bids for the purchase of $150,000 Wise county road district No. 2 bonds, and, after due consideration of all bids presented, it is the judgment of the court that the bid of Breg, Garrett & Co., which is par and accrued interest, less $13,800 to cover cost of printing, legal opinion and other expenses incident to the issuance and sale of said bonds, is the highest and best bid, and said bid is herewith accepted."

The county judge and several of the commissioners testified in relation to the transaction. We will not undertake to set it out at length, as the testimony is somewhat voluminous, but it seems evident that the proposition and acceptance, as noted in the order of the commissioners' court, was construed as a sale of the bonds to Breg, Garrett & Co. at par and with accrued interest, with an agreement on the part of the county to allow Breg, Garrett & Co. $13,800 to cover costs of printing, securing legal opinion, and other expenses incidental to the issuance and sale of the bonds, it being the purpose of the commissioners' court in the first instance to pay the said $13,800 out of the general funds of the county and later reimburse the general funds to that extent out of the sale of the bonds.

Strictly speaking, we do not think it can be said that Wise county made a sale of the bonds to Breg, Garrett, & Co. That company made no proposition to buy. Its proposition was simply to find a purchaser for a stated consideration to be paid out of the general funds of the county. To constitute a contract a proposition must be accepted in the very terms in which it is made, and it was so accepted by the county judge. The order of the commissioners' court, at most, can legally be given no greater effect.

Appellants have made no complaint either in the court below or here of the proposal of the commissioners' court to pay the $13,800 out of the general funds of the county to Breg, Garrett & Co. for their services in procuring the sale of the bonds, nor in its essence do the appellants seek to restrain the sale of the bonds in question at par and accrued interest. The gist of their complaint, and that which they seek to enjoin, is the proposed appropriation from the proceeds of the bonds when sold of said $13,800 to pay Breg, Garrett & Co. Appellants' essential contention is that, under article 632, Rev. Statutes, no part of said allowance to Breg, Garrett & Co. can be paid out of the

proceeds of the bonds. The contention of appellees, on the contrary, is that, under article 632, as amended in 1917, such commission was reasonably necessary and incident to the issuance of the bonds, and might therefore be lawfully paid out of the proceeds of their sale. Prior to the amendment of 1917, bonds of the character under consideration could not be legally sold at less than their par value and accrued interest, exclusive of commissions. See articles 615, 617, and 632, Rev. Statutes, and others of like import. But in 1917 article 632, among others, was amended. The amended article decalres that:

"Such bonds, when so issued, shall continue in the custody of and under the control of the commissioners' court of the county in which they were issued, and shall be by said court sold to the highest and best bidder, for cash, either in whole or in parcels, at not less than their par value, and the purchase money therefor shall be placed in the county treasury of such county to the credit of the available road fund of such county, or of such political subdivision or defined district of such county as the case may be; provided that the expense incurred in surveying the boundaries of a political subdivision or defined district of the county and other expenses incident to the issuance of bonds of such poltical subdivisions or defined districts shall be paid from the proceeds of the sale of the bonds of the district," etc. See General Laws 1917, page 463; 1 Vernon's Supp. 1918, art. 632.

The question, therefore, is: Can it be said, as appellees contend, that the $13,800 contracted to be paid to Breg, Garrett & Co. is an expense "incident to the issuance of the bonds" in controversy and therefore such sum as may be lawfully paid out of the proceeds of the bonds when sold?

[3] Among other definitions of the term "issue" when used, as here, as a verb, given in 23 Cyc. p. 358, is:

"To send out, to send out officially; to send forth; to put forth; to deliver, for use, or authoritatively; to put into circulation; to emit; to go out; to go forth as authoritative or binding."

In Cattlemen's Trust Co. v. Turner. (Tex. Civ. App.) 182 S. W. 438, this court held that stock in a corporation which was not delivered did not "issue" within the meaning of the Constitution (article 12, § 6) and V. S. Ann. Civil Statutes 1914, art. 1146, prohibiting corporations from issuing stock except for money paid, labor done or property actually received. The decision on appeal was reversed by our Supreme Court but not on the ground of error in the definition of the term "issue." 215 S. W. 831.

In the case of City of Austin v. Valle (Tex. Civ. App.) 71 S. W. 415, by the Court' of Civil Appeals of the Third District, writ of error refused, it was. held that certain municipal bonds in excess of the charter limitations could not be said to be "issued" within the meaning of the limitations until actually sold and delivered. To the same general effect is the case of Fleming-Stitzer Road Building Co. v. Chastain, Judkins & Chastain, 241 S. W. 619, from Eastland county, decided by this court on April 1, 1922. In that case the material inquiry was whether certain roads bonds of the authorized amount were in excess of the limitations prescribed by the laws. We held, in an opinion by Associate Justice Buck, not yet [officially] published, after an exhaustive consideration of the statutes and authorities, that bonds authorized but not sold were not to be considered in determining whether the "issue" was within the limitation of the road laws there under consideration. In other words, that it could not be said that the bonds were "issued" until actually sold. See, also, Hidalgo County Draining District v. Davidson, 102 Tex. 539, 120 S. W. 849, and 2 Words & Phrases, First and Second Series, 1210.

[4, 5] We agree, therefore, with appellees that, in cases where a commissioners' court in the exercise of a sound discretion finds it reasonably necessary to employ bond brokers to aid in the sale of bonds of the character under consideration, they may do so, and, under the operation of the amended article 632, may lawfully pay a reasonable commission out of the proceeds of the bonds so sold. In other words, we think in such case such commission is an expense "incident to the issuance" of the bonds, within the meaning of the amended article. But we feel that it is equally clear that the authorization of the amended statute cannot be extended beyond the limitations we have defined; that is to say, the authority of the commissioners' court to contract for and pay out of the proceeds of such bonds when sold a reasonable brokerage fee or commission should not be construed as authorizing the court to fix an unreasonable and exorbitant brokerage fee or commission as an indirect method of selling the bonds at less than their par value with accrued interest, contrary to the express provisions of the statutes relating to the subject. All of the statutes, both original and amended, expressly declare that bonds of the character under consideration shall not be sold at less than their par value, and this was recognized to be true both in the proposition of Breg, Garrett & Co. and in the aceptance thereof, if it must be said there was an acceptance, by the commissioners' court. But a consideration of the evidence in this case tends strongly to show, we think, that the agreed commission to Breg, Garrett & Co. was very largely in excess of what can be termed a reasonable brokerage fee. The county judge and several of the commissioners testified. Their testimony details considerable inquiry and effort to sell the bonds at par and accrued

interest and a failure to find a buyer. Among other things the county judge testified:

"Of course we did not know what Breg, Garrett & Co. would get for the bonds, but from what little knowledge I had of the bond market I did not think they would realize 100 cents on the dollar for the bonds. I did not know what the other members of the court thought about that matter, but I suppose we thought about the same. I had had right smart of experience in undertaking to sell bonds in Texas with bond buyers."

[6] It is to be noted that in the proposition that $13,800 was charged for "services rendered and to be rendered and to cover costs of printing, legal opinion," etc. We fail to find any evidence that shows that at the time of the submission of the proposition Breg, Garrett & Co. had performed services of any character entitling them to payment of any kind. The services contemplated were evidently services performed in the effort to secure a purchaser, which, so far as the record shows, had been secured; and one member of the court, in testifying in relation to this subject, in answer to inquiries said:

"I don't know how much the printing bill was. I did not investigate that. 'Legal opinion': I do not know what legal opinion we wanted. We were to pay for legal opinion to be rendered in the future, I guess. I do not know who was getting that money for legal opinion. The Attorney General had already passed on the bond issue and approved it."

There was other testimony tending to show that, in order to secure a purchaser in the bond markets of the large financial centers, such as Chicago or New York, it would be necessary to secure the formal opinion of lawyers who are recognized experts in passing upon the legality of the proceedings leading up to the issuance of the bonds, but the only estimate of what would be a reasonable fee for an opinion of such an expert upon the proceedings involved in this case is the opinion of one of the witnesses that a reasonable charge therefor would be $1,500. The evidence fails to show any other specific item of expense "incident" to the issuance of the bonds. It is true one witness associated with a brokerage firm tetified to the effect that a brokerage fee of $13,800 was a reasonable charge of securing a purchaser, but it must be, we think, that such an opinion was based upon the assumption that it would be necessary in order to secure a purchaser for the bonds at par and accrued interest to advance to or pay such a purchaser such sum as would enable the purchaser to secure the bonds at their market value when below par. As a further illustration of the subject under consideration, we quote the following questions and answers of one of the commissioners, to wit:

"Q. Now you spoke a while ago of commission. This says: 'For and in consideration of services rendered and to be rendered and to cover costs of printing, legal opinion,' etc. Don't say a word about commission. A. That is what I call commission. That is what I mean. I do not know what part of it is commission. I know it gets away with $13,800. The commissioners' court was going to replace the $13,800 out of the sale of the bonds. When we sold the bonds we were going to give Breg, Garrett & Co. $13,800 out of the general fund. We were going to pay that money out of course; pay it to Breg, Garrett & Co., the way I understand it. They were paying us 91.65 for the bonds. That is what we were realizing. They were paying par and accrued interest, and we were paying back this $13,800.

"Q. You were paying that to them? They were only to pay you, in the first instance, 91.65 for them? A. No; they paid us par and accrued interest. That was what, we realized after we paid this expense—commission. We would not consider any bid less than par and accrued interest.

"Q. This does not say that. Why didn't you just deduct this $13,800 from the $150,000 and just do it that way? A. That is the way you are trying to make it out. We did not do that because we did not want to do it. It was not right.

"Q. You did do that finally. It amounts to that. A. We had it to pay; we paid for it; yes.

"Q. Do you see any difference in coming directly to the end, and going a roundabout course like you did? As a matter of fact, there was no such thing as commission, legal services, legal opinions, in it, was there? A. Yes, sir; I think there was.

"Q. Was not the whole thing done for the purpose that you could sell it within the law, and come within the law, if you could possibly whip it around? A. Yes; and I think we came within the law."

Much other testimony has been considered, but we will not quote further from it, but content ourselves with saying, as before, that it very strongly tends to show that the $13,800 brokerage fee was allowed Breg, Garrett & Co. as an indirect means of enabling the commissioners' court to sell the bonds at less than their par value and accrued interest.

It is argued in behalf of appellees, in substance, that, if the payment of such commission was reasonably necessary in order to secure the sale of the bonds, it should be allowed and paid out of the proceeds received from the sale; to hold otherwise is to retard the development of the county and retard much needed improvements; but we cannot think that the law should be so construed. It has long since been found necessary to limit the power of municipal bodies to create indebtedness that may rest as burdens upon the tax-paying citizens of municipalities, and, when such limitations have been expressed, we think they must be observed, even though the state of the market may be such at the time that a sale as prescribed in

the limitation cannot be made. The remedy of the people in such case is to defer the desired improvements or to appeal to the Legislature for more liberal provisions.

We conclude, therefore, that the judgment in this case should be reversed, and the cause remanded, that further inquiry and determination may be had on the issue of whether the employment of the brokers to secure the sale of the bonds in question was reasonably necessary, and, if so, what would be a reasonable compensation for the services to be performed, exclusive of any and all further amounts that might be necessary to induce a purchaser to bid and pay par and accrued interest, as required by the law, and that the commissioners' court of 'Wise county should be restrained and enjoined from paying out of the proceeds of the sale of the bonds in question any amount of expense incident to the issuance and sale beyond the expense hereinbefore indicated.

[7] Appellees plead that the Legislature was without power under article 3, § 52, of the Constitution, to limit the amount of interest that could be allowed by bonds of the character under consideration, but we find nothing in the section of the Constitution quoted that supports any such contention. Moreover, we cannot see that the question is involved in this case, inasmuch as the interest on the bonds in question was in fact fixed at 5½ per cent., and of this fact neither the commissioners' court or any other person in this is in a position to complain.

[8] There is a further contention in behalf of appellees that we cannot proceed to judgment for the want of necessary parties, the contention being that Breg, Garrett & Co. should have been cited and made parties herein to the end that their rights might be included. It is of course well settled that all parties interested in the subject-matter are necessary to a final determination, but it is to be observed that in our disposition of the case we have not adjudged to be void the sale, if it is to be so considered, of the bonds to Breg, Garrett & Co., non have we been called upon to determine, nor do we determine, that the agreement of the commissioners' court to pay Breg, Garrett & Co. $13,800 out of the general funds of the county is void. We find it necessary to now say only that such sum, in the absence of a further hearing and determination on the subject in accordance with the views hereinbefore expressed, cannot be legally paid out of the proceeds of the bonds when sold. Should plaintiffs in error seek to have the sale of the bonds entirely forbidden, or to restrain the payment of the $13,800 out of the general funds of the county, then, indeed, we think it would be necessary to have Breg, Garrett & Co. made parties defendant.

For the reasons indicated, it is ordered that the judgment be reversed, and the cause remanded for determination of the unsettled issues hereinbefore indicated, with direction to the trial court to issue a restraining order forbidding appellees herein from paying out of the proceeds of the sale of the bonds of road district No. 2 any expense, commission, or brokerage, until the further and final order of the court.