## Henrietta Independent School District v. Garrett & Company.

No. 5453. Decided March 12, 1930.
(25 S. W., 2d Series, 317.)

*Wantland & Glasgow* for appellant.

The court having found, in the fifth paragraph of the Findings of Fact, and being his fifth finding of fact, that the contract constituting the subject matter of the lawsuit was entered into prior to the actual approval of the bond record by the Attorney General of the State of Texas, and the registration of the bonds by the State Comptroller, and waiver of purchase by the State Board of Education, erred in rendering judgment for the plaintiff, Garrett & Company because the approval of said bonds by the Attorney General, registration by the Comptroller and waiver of purchase by the State Board of Education was and is a condition precedent to a valid sale of said bonds. Revised Civil Statutes 1925, Articles 2670, 2673, 2786 and 2788; Board of Trustees v. Jacob, 170 S. W., 795; Bone v.

Black, 174 S. W. 971; Love v. Rockwall Independent School District, 238 S. W., 642.

*Weeks, Morrow, Francis & Hankerson* and *W. B. Garrett,* for appellee.

Said statutes are directory and not mandatory and do not make the contract void, as they do not contain words of positive prohibition. (See City of Uvalde v. Burney, 145 S. W., 311, etc.; Gomez v. Timon, 60 Texas Civ. App., 311, 128 S. W., 656; Davis v. State, 75 Texas, 420, 12 S. W., 962; French v. Edwards, 13 Wall. 506, 20 L. Ed., 702; 28 Cyc. p. 1608; Gibson v. Davis, 236 S. W., 202.)

MR. JUDGE CRITZ delivered the opinion of the Commission of Appeals, Section A.

This is a certified question from the Court of Civil Appeals for the Second District at Ft. Worth. The certificate is rather extended, and necessarily so, in order to apprise the Supreme Court of all the issues involved. We content ourselves with a sufficient statement to make clear the question certified, and our holding thereon.

The Henrietta Independent School District held an election in due form of law which resulted in authorizing the issuance of bonds in the amount of $60,000.00. On the 8th day of July, 1927, after said election had been held, and the result declared, Garrett & Company, a corporation, entered into a contract with the school district by the terms of which the district agreed to sell said bonds to Garrett & Company, and Garrett & Company agreed to purchase same for the specified sum of $60,000.00 and accrued interest to date of delivery, plus a premium of $1675.00, but the district was to pay Garrett & Company $1000.00 for its services, material, and supplies furnished in preparing, printing and perfecting said bonds, etc., thus making an agreed price for the bonds of par and accrued interest to delivery plus $675.00 net to the district.

Garrett & Company performed all the obligations imposed upon it by the contract, but the district breached the same by refusing to deliver the bonds, and sold them to Dr. A. B. Edwards at par and accrued interest, plus the sum of $3297.50, which was a fair market value at the time of such sale to Edwards.

At the time the contract between Garrett & Company was entered into the bonds in question had been legally voted by the district, but had not been actually issued, nor had the bond record been approved by the Attorney General of Texas. Also the bonds had not been

registered by the Comptroller nor had the State Board of Education waived its option to purchase. It was contemplated, however, by both the school district and Garrett & Company, at the time the contract was entered into, that all of these things would be done before the contract was finally consummated by delivery of the bonds, and payment of the consideration provided in the contract. Also there was no fraud involved in the transaction.

The bonds were finally duly issued by the district, the bond record and bonds duly approved by the Attorney General, registered by the Comptroller, and option to purchase waived by the State Board of Education. The district refused to consummate its contract with Garrett & Company, and sold the bonds to Dr. A. B. Edwards for the amount of money above shown. This suit followed.

The school district contends that its contract with Garrett & Company is void, and not binding upon it, because entered into prior to the approval of the record pertaining thereto by the Attorney General, prior to the registration of the bonds by the Comptroller, and prior to the waiver by the State Board of Education. In this state of the record the Court of Civil Appeals for the Second district has certified to the Supreme Court the following question:

"Whether or not the contract of sale entered into between Garrett & Company, and the Henrietta Independent School District on July 8th, 1927, is void because the bonds in question were sold to Garrett & Company prior to the actual approval of the record by the Attorney General, registration by the Comptroller, and waiver by the Board of Education, when the parties contemplated at the time of making the agreement that these things would be done before performance of the contract by delivery of the bonds, and the payment of the consideration therefor?"

An answer to the above question involves a proper construction of Articles 2670, 2673 and 2788, R. C. S. of Texas, 1925. Articles 2670 and 2673, read as follows:

"When any county bonds, or the bonds of any incorporated city, independent or common school district, road precinct, drainage, irrigation, navigation and levee districts are offered for sale, the party offering, or proposing to sell, such bonds shall first submit them to the Attorney General who shall carefully inspect and examine the same in connection with the law under which they were issued, and shall diligently inquire into the facts and circumstances so far as may be necessary to determine the validity thereof; and, upon being satisfied that such bonds were issued in conformity with

law, and that they are valid and binding obligations, he shall thereupon certify to their validity, and his certificate to that effect, so procured by the party offering such bonds for sale, shall be submitted to the Comptroller or State Board with the bonds so offered for sale, and shall be carefully preserved by the Comptroller. If the same be purchased from the county, city, precinct or district issuing the same, or from any person authorized to act for it in the negotiations or sale of such bonds, such bonds shall thereafter be held to be valid and binding obligations in every action or proceeding in which their validity is or may be called in question, unless fraudulently issued, or issued in violation of the constitutional limitation. In every such action such certificate of the Attorney General shall be admitted and received as prima facie evidence of the validity of the bonds and coupons thereto, which may have been so purchased."

"Whenever any county, city, independent or common school district, road precinct, drainage, irrigation, navigation or levee district of this State issues any bonds, and they have been approved by the Attorney General, as required by the preceding articles, the county judge, the mayor, the president of the board of trustees of the school district, or the county judge or party authorized by law to sell such bonds, shall notify the State Board of all bids received for such bonds, and shall give said Board an option of ten days in which to purchase such bonds; provided, that said Board will pay the price offered for such bonds by the best bona fide bidder; and, if the Board fails to purchase such bonds within said time, then such county judge, mayor, or president shall sell the bonds to the best bona fide bidder. If the State Board shall pay a premium out of the permaent school fund, on any bonds purchased as an investment for the permanent school fund, then the principal of such bonds and an amount of the interest first accruing on such bonds equal to the premium so paid, shall be treated as the principal in such investment, and when such first interest is collected, such sum of the same shall be returned to the permanent school fund, and, if they purchase said bonds for less than par, the discount they receive in the purchase of said bonds shall be paid to the available school fund when the bonds are paid off and discharged. The price paid for bonds shall be indorsed thereon at the time the same are purchased. If said Board shall refuse to purchase bonds from such county, city, precinct, or district, or the parties to whom said bonds were issued, then in no event shall said Board purchase said bonds from any subsequent owner or holder of the same."

The part of Article 2788 germane to the issues of this case reads as follows:

"When said bonds have been duly approved and registered, they shall continue in the custody of and under the control of said board and shall be sold by said board for cash, either in whole or in parcels."

It seems to be contended by the school district that Articles 2670 and 2673 above quoted, which provide, in substance, that before the bonds are offered for sale, the party offering to sell them shall first submit them to the Attorney General for approval, to the Comptroller for registration, and to the State Board of Education for the exercise of its option to purchase are mandatory, and that the instant contract is void because entered into before the actual happening of the things so provided, and this although the parties to the contract, at the time it was entered into, contemplated that these things should be done before the bonds would be actually delivered to the purchaser. We cannot sustain the contention of the school board. The statutes quoted are not mandatory to the extent that failure to comply with the strict letter thereof as to time will render the instant contract void, when the contract contemplated a substantial compliance therewith. In other words, the statutes contemplate that before bonds, such as these, shall be delivered to the buyer, they shall be approved by the Attorney General, registered by the Comptroller, and the State Board of Education given its option of purchase. In the instant case the contract contemplated a substantial compliance with all of the terms of such statutes, before the bonds should be delivered to the purchaser.

In our opinion the statutes quoted are intended to insure the approval by the Attorney General of the bond record and bonds, the registration thereof by the Comptroller, and the right to purchase by the State School Board, before such bonds shall be actually sold and delivered to an outside purchaser. When this is done, and the purpose and intent of the law carried out the contract is legal, and is not rendered void by the mere fact that the letter of the law was not complied with. This construction of the purpose and intent of these statutes is supported by the fact that they contain no words of positive prohibition, nor any provisions from which it is necessarily implied that the directions as to mode of procedure, or time mentioned therein, are exclusive and mandatory to the strict letter thereof. In other words the statutes do not provide that any contract for the purchase and sale of bonds made before the things therein provided have actually transpired shall be void, and there are no words used

declaring that the mode of procedure, or time provided shall be mandatory to the strict letter.

The question here involved was decided in principle by the Galveston Court of Civil Appeals in Gibson v. Davis, 236 S. W., 202. The Gibson case involved a sale of road bonds, but the statutory provisions here involved are the same. In the Gibson case the contract of sale was entered into before the bonds and bond record were submitted to the Attorney General for approval. It was contended that the bonds, and bond record had to be approved by the Attorney General, and the bonds registered by the Comptroller before they could be legally offered for sale or sold. The Court of Civil Appeals in a very able and exhaustive opinion by Justice Lane announced the law as follows:

"The question as to whether the requirements of article 619 of our Civil Statutes, to the effect that bonds issued under the provisions of such statute, together with the supporting record, shall be submitted to the Attorney General for his examination and approval before being offered for sale, is mandatory or directory only, may be, we think, determined by the rule as established by the authorities above cited. It will be noted that the provisions of the statute mentioned relate merely to the time and manner of making the sale of the bonds and is only incidental or subsidiary to the sale of the bonds, and that there is no negative word or anything in the statute from which it could be necessarily implied that the mode or time mentioned in it are exclusive, and that the act provided for, if done at a different time or manner, would not have effect.

"The contract for the sale of the bonds, sought to be enjoined, provided that the sale was to be consummated only upon the approval of the bonds by the Attorney General, and it follows that if, for any reason, the bonds or the records with reference to them were not approved by the Attorney General, the sale was not to be consummated, and therefore we conclude that the actual sale and delivery of the bonds was not contemplated until they and the record supporting their issuance were examined and approved by the Attorney General. Therefore, it seems to us that, if the Attorney General, after examination of the bonds and the record authorizing their issuance, approves the same, and holds that they are valid, and Cochran & Lilley are ready to execute their contract by paying to the county, for the benefit of road district No. 4, in cash, the par value of the bonds, together with the accrued interest thereon, it being shown by the undisputed evidence that the sum bid for the bonds was much above their

market value, and at a sum authorized by law, such proposed sale must be upheld as a substantial compliance with the law."

The construction we give Articles 2670 and 2673, supra, is also supported in principle by the case of Spencer v. Brown, 198 S. W., 1179. (Civ. App. Writ Ref.) It is provided by Article 2673, that houses or lands, etc., belonging to a school district may be sold with the consent of the State Board of Education, etc. It is also provided that in such cases the President of the School Board shall execute his deed to the purchaser reciting the resolution of the State Board, giving its consent thereto, etc. In the Spencer case, supra, it is shown that an independent school district contracted to sell school property such as is embraced within the provisions of Article 2673, before the consent of the State Board had been obtained, and the deed thereto did not recite the resolution of the State Board giving its consent. Failure to comply with the letter of the statute was made a point on appeal. The Court of Civil Appeals at El Paso in an opinion by Justice Higgins held:

"Article 2873, R. S., says the president of the school board 'shall execute his deed to the purchaser for the same, reciting the resolution of the State Board of Education giving consent thereto, and the resolution of the board of trustees authorizing such sale.' In this connection, the point is made that the agreement between the board of trustees and Brown recited no such resolutions. It is not believed it was the contention that such provision should nullify completely a deed executed without reciting the resolutions mentioned. It was intended, doubtless, that the deed upon its face should disclose the authority by which it was executed; but this provision is regarded as directory and not mandatory, and a failure to incorporate such resolutions in a conveyance does not nullify the same."

Finally we can conceive of no reason why the above statutes should be construed as mandatory to the letter. It is the evident purpose and intent of the law to provide for the approval of all bonds, and bond records, by the Attorney General, their registration by the Comptroller, an opportunity to purchase by the State Board, before they are actually and finally sold and delivered to an outside purchaser. A contract that contemplates all this shall be done before it is finally consummated is a substantial compliance with the law and all that is required. Such a contract is legal and binding, and does not violate any statutory provision. Any other construction would but hamper the sale of bonds, while accomplishing nothing.

Finally there is nothing in Articles 2788, supra, inconsistent with our holding above.

In our opinion the mere fact that the bonds and bond record had not been approved by the Attorney General, the bonds registered by the Comptroller, and the State Board of Education given its option to purchase, at the time the contract was entered into, would not render it void, when it was contemplated by the parties that all these things should be done before actual consummation of the contract by delivery of the bonds, and we recommend that the question certified be so answered.

The opinion of the Commission of Appeals answering the certified question is adopted and ordered certified.

*C. M. Cureton,* Chief Justice.