Spurgeon E. Bell, State's Atty., of Austin, for the State.

DAVIDSON, Judge.

The unlawful sale of whiskey in a dry area is the offense; the punishment, a fine of $100.

The commencement of the complaint upon which the information was based reads as follows:

"In the Name and by the Authority of the State of Texas:

"Before me, the undersigned authority, in and for Runnels County, Texas, on this day personally appeared A. P. Mercer who after being by me first duly sworn, says upon his oath, that he has reason to believe, and does believe and charge, that J. H. Loller * * *."

It is claimed that such complaint is fatally defective in failing to use the word "good" in connection with the terms "reason to believe." It is contended that, under the terms of Art. 222, C.C.P., a valid complaint based upon belief of the affiant must allege that the affiant "has *good* reason to believe, and does believe."

A substantial compliance with the provisions of the statute mentioned is all that is required. Brown v. State, 11 Tex. App. 451; Pittman v. State, 14 Tex.App. 576; Bell v. State, 18 Tex.App. 53, 51 Am.Rep. 293; Smith v. State, 103 Tex.Cr. R. 228, 280 S.W. 581. Under the above authorities, the complaint is sufficient.

No other question is presented for review.

The judgment of the trial court is affirmed.

PER CURIAM.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

## LOCKHART et al. v. A. W. SNYDER & CO. et al.
### No. 3955.

Court of Civil Appeals of Texas. Beaumont.
Dec. 31, 1941.

Rehearing Denied Feb. 11, 1942.

Further Rehearings Denied March 4, 1942.

Gerald C. Mann, Atty. Gen., and Ross Carlton, Clarence Crowe, and Geo. W. Barcus, Asst. Attys. Gen., for appellants.

Vinson, Elkins, Weems & Francis, W. S. Elkins, and V. W. Bouldin, all of Houston, and Arnold Smith, O. Etheridge, A. A. Turner, and McComb & Davis, all of Conroe, for appellees.

O'QUINN, Justice.

On May 20, 1940, after due notice, the Commissioners' Court of Montgomery county received bids for the purchase of $1,500,000 road bonds, voted and authorized by Commissioners' Precinct No. 2. Only two bids were received, one of which was summarily rejected on good grounds. The other was by appellees, A. W. Snyder & Company et al., a group of investment bankers, and was for all the bonds at par, plus accured interest and a premium of $16,500. On subsequent negotiations, in consideration of the guaranty by appellees to purchase the bonds, in the event the State Board of Education waived its option, Precinct No. 2, through the Commissioners' Court, bound itself to pay appellees, as a condition of their bid, the sum of $15,000; this sum was to be paid appellees whether or not they purchased the bonds. Appellees' bid and its guaranty contract with Precinct No. 2 were submitted to the State Board of Education on June 4, 1940. Tak·

ing the position that the $15,000, which Precinct No. 2 was to pay to appellees on their guaranty to purchase the bonds, should be deducted from appellees' bid, the Board exercised its option to purchase the bonds by offering to pay for them par, accrued interest, and a premium of $1,500, and refused the demand of Precinct No. 2 to pay par, accrued interest and a premium of $16,500. At that time, under provisions of law the bonds were on deposit with the State Comptroller, Geo. H. Sheppard, one of the appellants. When its demand for the payment of the full amount as bid by appellees was refused, on its construction of the bid, Precinct No. 2 made demand that the bonds be surrendered to it, which demand was refused. Thereupon the Commissioners' Court of Montgomery County, acting for Precinct No. 2, on the 19th day of June, 1940, sold and transferred the bonds to the State Board of Education for the benefit of the Permanent School Fund, on the agreed price of par and accrued interest, and on the condition that the amount of the premium to be paid by the State Board of Education "will be litigated and determined by the courts." The Commissioners' Court accepted from the Comptroller two warrants on the Permanent School Fund, one for $1,500,000, the par value of the bonds, and the other for $2,708.40, the accrued interest on the bonds; and for the benefit of Precinct No. 2 these warrants were cashed and the proceeds appropriated and expended by Precinct No. 2. On the consummation of this transaction, the Comptroller delivered all the bonds to Charley Lockhart, State Treasurer, one of the appellants, to be held by him for the benefit of the Permanent School Fund, and he has continuously held the bonds in that trust.

This suit was instituted by appellees against Charley Lockhart, State Treasurer, and Geo. H. Sheppard, State Comptroller, and the Commissioners' Court of Montgomery County and Commissioners' Precinct No. 2 of Montgomery County to recover: (1) Title and possession of the $1,500,000 road bonds that had been issued by Precinct No. 2 of Montgomery County, described above; (2) in the alternative, if they could not recover the bonds, they sought to recover from the defendant, Commissioners' Precinct No. 2 of Montgomery County, $30,000 in damages; and (3) in the further alternative, if they were not entitled to recover the bonds or the damages, then they sought to recover of and from the defendant, Commissioners' Precinct No. 2 of Montgomery County, the sum of $15,000.

As constituting their cause of action, appellees plead generally the facts detailed above, and further generally as follows: They alleged that Hickerson, the county auditor of Montgomery county, acting upon instructions from the Commissioners' Court of Montgomery County, did take the matter up with the State Comptroller and with the State Board of Education, and did give his receipt for and did accept the warrants for $1,500,000 principal, and $2,708.40 as accrued interest, on the State Permanent School Fund, and that said warrants were cashed by Montgomery County, that the State Board of Education directed the bonds to be delivered to Charley Lockhart, as State Treasurer, to be held by him under law for the Permanent School Fund, and directed the issuance of warrants to be drawn against the Permanent School Fund in the sum of $1,500,000 to pay the principal, $2,708.40 as the accrued interest, and $1,500 as the premium; that the Commissioners' Court of Montgomery County accepted under protest the two warrants—one for $1,500,000, and one for $2,708.40, but declined to accept the warrant for $1,500 in payment of the premium, because it contended that the premium warrants should be $16,500, the Commissioners' Court stating that they would accept the two warrants, and that the question of the amount of premium to be paid under appellees' bid would be left to be litigated and determined by the courts. Appellees alleged further that they were at the time they filed their pleading, and have at all times, been willing to accept the bonds and pay the contract price therefor. They alleged further that the Commissioners' Court of Montgomery County delivered the bonds in question to the defendants Sheppard and Lockhart for the benefit of the State Permanent School Fund; that in doing so they had violated their contract with appellees, and by reason thereof appellees were entitled to damages in the sum of $30,000; that said bonds were delivered by the County Auditor of Montgomery County to the defendants, Sheppard and Lockhart, for the benefit of the State Permanent School Fund on June 21, 1940.

Appellants answered by pleas of privilege to be sued in Travis county, which were overruled, of which they make no complaint. Subject to their pleas of privilege, they filed a plea in abatement, that the suit

in effect was against the State of Texas and the State Board of Education, a governmental agency, and that they were necessary parties to the litigation. As the basis of this plea, appellants plead generally the facts as detailed above and that they had no right, title or interest in the bonds, that the bonds had been bought by the State Board of Education for the benefit of the Permanent School Fund, and paid for with funds belonging to the Permanent School Fund, and that appellant, Charley Lockhart, held the bonds under authority of Art. 4378, R.C.S. 1925: "The Treasurer shall be the custodian of all bonds in which the school funds of the State have been or may hereafter be invested, and shall keep said bonds in his custody until the same have been paid off, discharged or otherwise disposed of by the proper authorities of this State." Subject to the plea in abatement, appellants answered by general demurrer and general denial.

On trial to the court without a jury, after overruling the plea in abatement, judgment was entered in favor of appellees against appellants for the relief prayed for, to the amount of $1,345,000 of the bonds—the remaining portions of the bonds having been redeemed by Precinct No. 2; and orders were made to effectuate the judgment. Since only appellants prosecuted their appeal from the judgment of the lower court, the other provisions of judgment are immaterial to this appeal.

### Opinion.

It is our conclusion that the judgment of the lower court, in so far as it affects appellants, must be reversed and judgment here rendered for appellants, for the following reasons.

 The condition of appellees' bid, that they were to receive $15,000 for their guaranty to purchase the bonds, whether or not they were the purchasers, was without support in law and void. Art. 708, R. C.S. 1925, provides that bonds of the nature in issue in this case shall never be sold at less than par and accrued interest, exclusive of commissions. In Stephens County v. H. C. Burt & Co., Tex.Civ.App., 19 S.W.2d 951, the court held that the provisions of this article are mandatory. See, also, Davis v. San Antonio, Tex.Civ.App., 160 S.W. 1161. Article 708 authorizes the payment of a commission, which was expressly recognized by the court in Stokes v. Paschall, Tex.Civ.App., 243 S.W. 611. The compensation to be paid appellees in the sum of $15,000 on their bid was not a commission within the provisions of Art. 708, but nothing more than an independent compensation for making the bid. We know of no authority giving a bond bidder a brokerage commission for buying the bonds for himself. If such were the law, a bond bidder, under contracts of the nature of appellees' contract with Precinct No. 2, could overbid the State Board of Education on any bond issue and recoup its loss by a guaranty compensation, as a credit against its bid. It follows that appellees acquired no rights in the bonds by virtue of their bid, and having no rights in the bonds they showed no right of ownership to sustain this suit.

 But appellees acquired no right in the bonds by virtue of its bid, regardless of the character of this bid. Notwithstanding the Commissioners' Court of Montgomery County held appellees' bid on the bonds, it had the lawful right to reject the bid or to disregard the bid, and to sell the bonds to the State Board of Education. Henrietta Independent School Dist. v. Garrett & Co., 119 Tex. 141, 25 S.W.2d 317. There is no merit in appellees' contention that the State Board of Education lost its statutory option to buy the bonds because it did not tender the purchase price within the statutory time. The issue of waiver on the point made by appellees is only between the State Board of Education and the Commissioners' Court, and is not available to appellees. Also, appellees point that the Commissioners' Court acted under "duress" in selling the bonds to the State Board of Education is not available to appellees. It necessarily follows that these two points are not available to appellees because they had no title to the bonds or interest therein, by virtue of their unsuccessful bid.

 It cannot be questioned, on the undisputed facts, that the State Board of Education purchased these bonds. The minds of the parties met on the consideration—par, accrued interest, and a contract that the amount of the premium "will be litigated and determined by the courts." We know of no provision of law denying the parties to this contract of sale the right to leave open for adjudication the amount of the premium. Appellants, on the undisputed facts, had no interest in the bonds. They were not in the possession of the Comptroller, but simply held by the Treasurer, under statutory authority. On the undisputed facts, the State of Texas or the State

Board of Education was a necessary party to this suit and, therefore, the court erred in overruling the plea in abatement.

The judgment of the lower court is reversed and the cause remanded, with instructions to the lower court to sustain the plea in abatement and to dismiss from its docket appellees' cause of action, as between them and appellants. This order affects the judgment of the lower court only to the extent that it is before us for review by the appeal perfected by appellants.

Reversed and remanded with instructions.

### On Rehearing.

A further study of the record convinces us that the judgment of the lower court should be reversed as to all parties and remanded for a new trial as to all parties, but without instructions to the lower court to dismiss the cause from its docket; that issue to be decided by the lower court on the record as presented to it on a new trial. The ambiguity of the judgment in the following respects requires this amendment to our original order. The lower court found: "1. That plaintiffs in open court abandoned their cause of action against Commissioners Precinct No. 2 of Montgomery County, Texas and the members of the Commissioners Court of said County to the extent of their claim for damages in the sum of $30,000.00 for breach of contract."

Following this finding, the court made the following decrees:

(a) "It is Further Ordered, Adjudged and Decreed by the court that the plaintiffs take nothing on their claim against the defendants Commissioners Precinct No. 2 and the members of Commissioners Court of Montgomery County, Texas, for damages in the sum of $30,000 for alleged breach of contract."

And (b) "It is Further Ordered, Adjudged and Decreed by the court that the plaintiffs have and recover of and from Commissioners Precinct No. 2 of Montgomery County, Texas, the sum of $15,000, being one per cent compensation provided for in the above described contract for the sale and purchase of said bonds, the same to be paid out of the proceeds of the sale of said bonds."

And again: (c) "It is Further Ordered, Adjudged and Decreed by the court that the plaintiffs do have and recover of and from the defendants and each of them the remaining $1,345,000. Road Bonds of Commissioners Precinct No. 2 of Montgomery County, Texas, described in plaintiffs' First Amended Original Petition, and the defendants Lockhart and Sheppard are hereby ordered to deliver all of said bonds in their possession to the Clerk of this Court to be held in the registry of this court."

And (d) "It is Further Ordered, Adjudged and Decreed by the court that cross-plaintiffs, Commissioners Precinct No. 2 of Montgomery County, Texas, and the members of the Commissioners Court of said County, in their official capacity, recover of and from the defendants, Lockhart and Sheppard said road bonds to be delivered to the Clerk and into the registry of the court and to be delivered by the Clerk to Plaintiffs as herein decreed."

As against appellants' plea in abatement, all orders effecting the custody, control, and ownership of the bonds, as such orders affect all parties, must be reversed.

In one portion of the judgment copied above, it was decreed that "the plaintiffs take nothing on their claim against the defendants Commissioners Precinct No. 2," and in another portion of the judgment it was decreed that "the plaintiffs have and recover of and from Commissioners Precinct No. 2 of Montgomery County the sum of $15,000.00." The judgment was so entered as between plaintiffs and Commissioners Precinct No. 2 after plaintiffs, as the court found, had "in open court abandoned their cause of action against Commissioners Precinct No. 2 of Montgomery County."

In all other respects the motions for rehearing are overruled.