## S. J. VARNER v. W. J. CARSON ET AL.

### SUPREME COURT, AUSTIN TERM, 1883.

*Contract—Rescision of.*—Where the petition for rescission of contract alleged that a $2000 note was cancelled in consideration of a lot worth $150.00; that plaintiff was an illiterate woman, unaccustomed to business, overwhelmed with grief at the loss of her husband, belonged to the same church with the trustees with whom the transaction was had, relied fully and implicitly upon them and their representations that she could not make her debt out of the church, and that the said lot was worth more than the debt, etc, *held,* that a good cause of action was set forth, and that plaintiff should have been allowed to go to the jury and by proof make good her allegations.

As this case was dismissed upon a general demurrer filed to the appellees' petition, we are of course to consider the allegations of that petition as true in every respect in passing upon the ruling of the court.

The allegations upon which it was sought to rescind the contract for the cancellation of the note held by Mrs. Varner against the trustees of the church, and the deed made to her for the town lot in return for such cancellation, are substantially to this effect: That at the time of making this contract she was an illiterate woman, unaccustomed to business of any character except domestic affairs; that her husband had just died, and she was overwhelmed with grief at his loss; that she had never lived in the town of Weatherford, nor in any other town or city, but always in the country; that the trustees were members of the same church with herself, and that she relied fully and implicitly upon them to communicate facts truly, and advise her as the best course to pursue. Further, that it was represented to her by the appellees that she could not make her debt out of the church, and if she did not take the lot for the debt, she would get nothing; that the lot offered in exchange for the note was an extra lot, very desirable, worth then the sum of $2000; and that the appellees knew that within a short time she could get more than $2000 for it; that she could easily lease it for a number of years, and that the lessees would erect business houses upon it, and in four or five years surrender her the buildings so erected, in consideration of the ground rent; and that the trustees knew that the

railroad depot would soon be on Fort Worth street, and there would then be no more valuable lot in Weatherford.

It is further alleged that she was induced by these representations, which she charges to have been untrue, in many respects, to deliver up a note which she held against the trustees of the Methodist church at Weatherford, which was perfectly good, and to receive in lieu of it the above mentioned lot, which, instead of being of the value of $2000, was not worth more than $150, and the use of the basement of the church, which was of little or no value. It is insisted by appellant that these allegations, taken together, show sufficient facts to entitle her to a rescission of the contract, for the reasons that they show imposition upon her, a breach of confidence reposed by her in the trustees, fraudulent misrepresentations on their part, and the cancellation of the note for an unconscionably small consideration.

The grounds upon which the demurrer was sustained to the petition are not found in the record, and as the appellees have not filed briefs in the cause, we are left to conjecture the reasons for the decision of the district judge. His ruling was doubtless based upon the idea that the representations alleged were, some of them, matters of opinion on the part of the appellees, and the others, statements of what would occur in the future. That there was not such weakness of mind or incompetency for making contracts on the part of Mrs. Varner, charged, as rendered her subject to be imposed upon by the persons with whom she traded; nor such confidence reposed in their integrity as made them liable for deceit practiced upon her; and lastly that the bargain was not so unconscionable as to shock the sense of right and justice and lead to an inference of fraud. It is no doubt a general rule both in law and equity, that misrepresentations of value either present or prospective are mere matters of opinion and no relief is afforded to those who are deceived by them. (Vernon v. Keys, 12 East, 637; Anderson v. Hill, 12 Smedes & Marshall, 679; Ad. Eq., p. 177.) The same may also be asserted as to misrepresentations as to the solvency and responsibility of third parties.

But to these general rules, there are numerous exceptions, and whether or not a contract is to be enforced or

avoided for fraud, must depend in a great measure upon the particular circumstances of the case under consideration. It is said that fraud is so multiform as to admit of no rules or definitions, and hence equity leaves the way open to punish frauds and redress wrongs perpetrated by means of them in whatever form they may appear. (Big. on Fraud, 14.) An act which would not be considered fraudulent if perpetrated upon a person of mature or vigorous age, and of ordinary mental capacity, and between whom and the contracting parties there was no relation of trust or confidence, will be impressed with a fraudulent character, if the suffering party be under duress, or an infant, or an imbecile from old age, or weakness of intellect, produced by any cause, or if there be a relation of trust between the contracting parties.

"The general theory of the law in regard to acts done and contracts made by parties affecting their rights and interests is that in all such cases there must be a free and full consent to bind the parties. Consent is an act of reason, accompanied with deliberation, the mind weighing as in a balance the good and evil on each side." (1 Story Eq. sec,, 222.)

A deliberate mind presupposes the possession of mental faculties capable of reflection and rational thought. If these faculties are lacking for want of sufficient development, or by reason of natural decay or other physical infirmity, the law requires greater fairness on the part of those dealing with such subjects, and less proof of deceit, oppression or imposition will be sufficient to set aside contracts made with them than in ordinary cases. (Ellis v. Matthews, 18 Tex., 390 ; Wartenberg v. Spiegel, 31 Mich., 400.)

No definite rule or plan can be laid down as to what condition of mind or degree of mental imbecility is sufficient to avoid a contract made with a party taking advantage of it. As in the case of fraud itself each case will depend upon its own circumstances, and the state of the mind must be taken in connection with the other facts of the transaction to determine whether or not the contract may be avoided. (Big on Frauds, 283–284.)

It is not necessary that the incapacity should be permanent in order to avoid a contract, but a temporary suspension of faculties by fear or overwhelming grief, is enough to require the strictest good faith on the part of those making

representations to one in such condition. (Willson v. Watts, 9 Ind., 356; Lavitte v. Sage, 29 Conn., 577.)

The duty to observe the rules of fair dealing becomes still more obligatory where the person dealt with is not only not in a a proper condition to enter into agreements, but confides in the opposite party and implicitly trusts to his statements in reference to the subject of the transaction. The most usual instances of trust are those of guardian and ward, attorney and client, trustee and *cestui que* trust, etc. But these are not the only ones, and no enumeration can be made of the many different relations which may grow between parties in which the one confides to the other in business transactions. Some of these may require a more strict adherence to honesty than others, but in any case where it is true that one party relied on the other, and had a right to do so, and such reliance must have been known. a sufficient relationship of confidence is shown to require more than ordinary good faith in dealing. (Butler v. Miller, 1 Ire Eq., 215; McCormick, 5 Block, 509; Willson v. Watts, 9 Ind., 356.)

Again, whilst mere inadequacy of consideration may not be sufficient to set aside a contract made between persons standing on equal terms and in a situation to judge for themselves, it has been held that if it be of so gross a nature as to amount in itself to decisive evidence of fraud, it will avoid a contract made between such parties. Butler v. Haskill, 4 Dawson 651; Kerr, on fraud and mistake, 186–187; Green v. Thompson, 2 Ire. Eq. 365.

It certainly is good cause to set aside an agreement when one laboring under imbecility, ignorance, distress or the like, has parted with property at a price so inadequate as to shock the sense of justice in any correct thinking mind. Tracy v. Sackett, 1 Ohio St. 54; Perkins v. Scott, 23 Iowa 237.

Applying these principles to the allegations in the present petition, we find misrepresentations, which fall but little short, if any, of what would be sufficient to rescind a contract made with a person of ordinary capacity, made to an illiterate woman, wholly incapable from her situation and previous habits of judging of the value of the property, or of the responsibility of the parties whose obligation she surrendered. One rendered still more incapable by over-

whelming grief and distress, caused by the late loss of her husband, and confiding in the judgment and integrity of the parties with whom she was trading because they were her brethren in the same church. We find too, that induced by such representations, and incapable from her condition of judging for herself, and reposing entire confidence in parties with whom she was dealing, she parted with valuable property for one thirteenth of its value; a note on solvent persons for two thousand persons in exchange for a lot not worth over $150.

It would seem that, grouping all these facts, and not considering any one except in connection with the others, the case is brought fully within the principles and authorities above stated, and the plaintiff had set forth a good cause for rescinding her contract and she should have been allowed to go to the jury and sustain her allegations by proof if she could.

Numerous cases may be found in the books where the courts have rescinded contracts with fewer circumstances of fraud surrounding them, than are found in this one made by the petition, despensing equity in each case upon its peculiar facts and inferring fraud from connected facts, each one of which would be insufficient in itself to raise the presumption. Lavite v. Sage, *supra*; Tally v. Smith, 1 Cold. 590; Walker v. McCay, 3 Hend. 103; Seely v. Price, 14 Mich. 541. We think the court erred in sustaining the general demurrer to appellants' petition and for this error the judgment is reversed and the cause remanded.

BOOK NOTICE.—*Hobby's Land Law*, by Judge Edwin Hobby, the Gilbert Book Co., St. Louis, publishers.

The volume with the above title has been placed upon our table, and from the hasty examination we have given it, we are convinced that the task the author imposed upon himself in this undertaking has been faithfully and completely performed. The want of such a work has long been felt, in Texas and we are sure that the volume will meet with the universal appreciation of the bench and bar of the State. Covering as it does the whole scope of the subject treated of, it must necessarily find its way into the hands of every practitioner. Being a work of nearly one thousand pages, executed with the usual well known taste and skill of the publishers, it is well worth the publishers' price, $7.50.