## STEPHENS COUNTY v. H. C. BURT & CO.
### (No. 569.)

Court of Civil Appeals of Texas. Eastland.
June 7, 1929.

Rehearing Denied Sept. 13, 1929.

Ben J. Dean, of Breckenridge, for appellant.

T. B. Ridgell, of Breckenridge, and Scott & Gilbert, of Cisco, for appellee.

LESLIE, J. The plaintiff, Stephens county, sued the defendant, H. C. Burt (whose trade-name is H. C. Burt & Co.), in Stephens county. The defendant filed his plea of privilege to be sued in Harris county, Texas. Trial was had before the court without a jury on the issues arising upon the plea of privilege, and judgment sustaining the plea was rendered. The plaintiff appeals.

Venue was sought under section 7, art. 1995, Rev. St. 1925, the general venue statute, as amended by Acts 1st Called Sess. 1927, c. 72, § 1, providing for venue of suits originating in fraud. The suit was grounded on fraud alleged to have been committed in Stephens county, and as we interpret the pleadings they set forth a cause of action based upon an alleged fraud, as contradistinguished from a cause of action based upon some character of contract, express or implied. The gist of the action is for damages sustained by reason of the appellee's fraudulent acquisition of public funds in Stephens county.

Said county, having voted a "million dollar special road bond," sold the same to H. C. Burt for par and accrued interest, as required by article 708, Rev. St. 1925: "Bonds shall never be sold at less than their par value and accrued interest, exclusive of commissions." The above article is mandatory, and no citation of authority to that effect is necessary. Burt, in his offer to buy the bonds, proposed to pay par and accrued interest *to date of delivery and payment.*

The fraud upon which this action is based and venue claimed is predicated upon an alleged failure and refusal of the defendant Burt and the commissioners' court of Stephens county, in the consummation of the above deal, to observe either the spirit or the letter of the above statutory provisions, as well as others hereinafter to be noticed. There are three or four different phases of the alleged fraud, and each will be noticed.

It is alleged (and such appears to be the fact) that the bonds were to be sold at "par and accrued interest to date of delivery and payment," under an agreement whereby said bonds were to bear the date of January 12, 1925, and which said bonds were to be delivered to said Burt & Co. as follows: $300,000 within three months from date, or April 12, 1925; $300,000 within six months from date, or July 12, 1925; $400,000 within nine months from date, or October 12, 1925. The purchaser was obligated to take up the bonds on the above schedule only, but the contract extended to the purchaser *the option of taking up and paying for all of said bonds or any portion thereof at any time after the same were ready for delivery.* On the same day—January 12, 1925—the above sale was agreed upon, Stephens county and the H. C. Burt Company entered into an additional contract whereby said purchaser agreed to print said road bonds—1,000 in number—and to pay "all shipping charges on such bonds in connection with their sale and delivery, and to pay all proper insurance and exchange thereon," in

consideration of which Stephens county agreed to pay H. C. Burt "an amount equivalent to interest on such bonds from their date up to the date of delivery and receipt of payment therefor. * * * Such compensation shall be paid at the time of delivery and receipt of payment for such bonds * * * or installments."

In operating under the foregoing contract or arrangement, the county and the defendant Burt pursued the following practical course:

February 7, 1925, said commissioners' court entered the following order:

"It is ordered by the court that, in the event H. C. Burt & Company desires to take up and pay for the three installment deliveries of Stephens County Series C road bonds before dates specified in contract of purchase dated January 12th, 1925, that H. C. Burt & Company be allowed on each installment *the amount of the accrued interest that they would receive if payment were made on dates mentioned in the contract,* and it is further ordered that payment be made to H. C. Burt & Company for said accrued interest on each installment immediately after the treasurer has received payment for the bond at par and accrued interest." (Italics ours.)

February 13, 1925, H. C. Burt took up the first installment of bonds, amounting to $300,000, paying par and $1,375 accrued interest. February 20, 1925, Burt took up all remaining installments of the bond, paying therefor $700,000 and $3,956.90 accrued interest. February 18, 1925, the county paid out of the special road bonds to H. C. Burt & Co. the sum of $4,125, stated to be "for refund bond sale contract." February 24, 1925, the county paid to H. C. Burt from said funds $24,750, stated to be "for interest on bond sale."

It thus appears that the commissioners' court of Stephens county paid to said Burt for the printing, transporting, insurance, etc., provided for in the order of February 7, 1925, the sum of $28,875. It appears that, instead of paying for the printing, etc., an amount equivalent to the interest on such bonds from their date until the date of delivery and receipt of payment therefor, the commissioners' court, by its order of February 7th, extended to H. C. Burt the option of taking up each installment of the bonds on a date earlier than that specified, as hereinbefore set out, and in that same connection and with some degree of liberality paid to him the amount of the accrued interest that Burt would have received, if payments had been made on the dates mentioned in the contract; that is, at the end of three, six, and nine months.

At this point it may well be noticed that the undisputed testimony was to the effect that the services rendered by Burt in the above respect was of a reasonable value of $500 or $600. One experienced printer of 15 years' standing testified that he would have done the work for $600, had he been given

the privilege of doing so. Appellee Burt introduced no proof whatever upon the trial.

If the reasonable value of the printing of the bonds, etc., did, in fact, exceed $2,000, then, as contended by the appellant, the contract should not have been made without "first submitting such proposed contract to competitive bids," as provided in article 2368, Rev. St. That statute provides that the penalty for failing to advertise for bids when a contract is in excess of $2,000 renders the contract void. Such being the case, it must be conceded that the appellee Burt was aware of this statute, and well knew that it stood out as a sentinel on guard for the protection of the county and public, regardless of any indifference which either he or the majority of the commissioners' court might display towards such a beneficent law.

The arrangement entered into between these parties had a further advantage for the purchaser of the bonds. It enabled Burt to collect for the printing, etc., not merely "an amount equivalent to the interest on such bonds from their date up to the date of delivery and receipt of payment," the amount denominated in the order and agreement of January 12th, but he was, under the subsequent order of February 7th, above quoted, paid the sum of $28,875 under such arrangement, whereas the accrued interest on the bonds at the date they were, in fact, paid for and delivered was at most but $5,331.90, a sum itself considerably in excess of $600 indicated by all the testimony as a fair and reasonable value for the printing done. A mere statement of the facts indicates the probable merit in appellant's contention that the consideration (printing of bonds, etc.) paid by Burt & Co. for the $28,875 was grossly inadequate and shocking to the conscience of a reasonable person, and amounted to a fraud on the public, and Stephens county in particular. Gulf Bitulithic Co. v. Nueces County (Tex. Com. App.) 11 S.W.(2d) 305; 2 Pomeroy's Equity Jurisprudence, p. 1939.

The appellant further contends that, under another view or phase of the case, no consideration whatever was paid for the major portion of the $28,875. This conclusion is deduced from the following circumstances: The undisputed testimony is to the effect that $500 or $600 was a reasonable price for the printing, etc. Burt did not testify to the contrary, and no testimony was offered to refute the contention. Plainly Burt & Co. contracted to purchase the bonds and pay par and accrued interest to date of payment and delivery. Now the sum equivalent to the interest on the bonds from date until they were actually paid for and delivered (February 13 and 24, 1925) amounted to only $5,331.90. Had the original contract of January 12th been adhered to, in all fairness the county would have paid no more than the sum last mentioned. Nevertheless, since the county elected to enter the

order of February 7th aforesaid, and pay Burt & Co. the sum of $28,875, it is indeed difficult to discern what consideration passed to the county for the large sum of $23,543.10, which, combined with the sum of $5,331.90 (interest actually accruing), made up the total of the amount paid for printing the bonds, etc. In fact, the payment of this additional sum of $23,543.10 has all the earmarks of a generous donation of public funds, unwarranted by law.

The separate phases of appellee's dealings with Stephens county have been noticed. Combined they have a broader aspect. When considered as a whole, we are of the opinion that the transactions involved in the appellee's purchase of the Stephens county road bonds evidence a definite and deliberate design on the part of those selling, as well as the purchaser, to evade, not only the provision of the statute relating to competitive bids, when contracts involve a sum in excess of $2,000, but also evidence the purpose and design to evade another statute (article 708, Rev. St. 1925), which prohibits the sale of such bonds at less than par and accumulated interest, exclusive of commissions. If substance rather than shadow be given paramount consideration, it must appear that the method adopted by the parties by which the appellee was enabled to purchase the bonds, apparently at par and accumulated interest, and at the same time print the bonds under an agreement by which he was to receive $28,875 for a printing job of the probable value of $600, was but a pretext by means of which the appellee purchased the county's road bonds at a discount of 2.354 per cent., which was in contravention of law, as was well known by the appellee. In any event, he was charged with such information.

From the foregoing, it follows that we are of the opinion that, by reason of the manner in which the appellee acquired the county's funds herein sued for, he was guilty of a constructive fraud, perpetrated in Stephens county, Texas. Corpus Juris, vol. 26, p. 1061, defines such a fraud as follows: "Constructive fraud is a breach of legal or equitable duty which, irrespective of the moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others, to violate public or private confidence, or to injure public interests." For further discussion of this character of fraud, see Parker v. Solis (Tex. Civ. App.) 277 S. W. 714; Glaser v. Henderson (Tex. Civ. App.) 2 S.W.(2d) 987; Gulf Bitulithic Co. v. Nueces County (Tex. Civ. App.) 297 S. W. 747.

While it is not necessary for us to determine here whether fraud was established upon the hearing of the plea with that degree of certainty necessary to warrant recovery, it does appear, to say the least, that there was sufficient evidence upon the hearing to make a prima facie case, or to show a substantial controversy over the question of alleged fraud. Upon such a showing the requirements of the venue statute are met. First Nat. Bank v. Childs (Tex. Civ. App.) 231 S. W. 807.

Further, there can be no doubt about section 7, art. 1995, the general venue statute, applying in this character of alleged fraud. As stated by our Supreme Court through Justice Gaines in Boothe v. Fiest et al., 80 Tex. 141, 15 S. W. 799, 800: "The exception (section 7) in the statute applies as well to constructive as to actual fraud. Stanley v. Westrop, 16 Tex. 200."

For the reasons assigned, we believe the trial court erred in sustaining the appellee's plea of privilege. The other points raised by appellant are overruled.

The judgment of the trial court is reversed and the cause remanded.

HICKMAN, C. J., concurs.

FUNDERBURK, J. (dissenting). If plaintiff's pleading is properly to be interpreted as alleging a cause of action "based upon an alleged fraud, as contradistinguished from a cause of action based upon some character of contract express or implied," then the writer would be able to concur in the disposition of the case made in the majority opinion. Plaintiff's pleading, among other things, alleged that plaintiff had in writing given notice to defendant "to repay said money." The prayer is for recovery of the said $28,875, "with interest as aforesaid," etc. The pleading nowhere denominates plaintiff's claim as one for damages. In determining if there is presented by plaintiff's petition a "case of fraud," within subdivision 7 of article 1995, it is necessary to bear in mind the distinction between a cause of action and the evidence necessary to support a cause of action. Undoubtedly, subdivision 7 does not fix the venue of all cases wherein the evidence necessary to support the cause of action relied on, and, irrespective of the nature of the cause of action, discloses the existence of fraud.

To the writer it seems sufficiently certain that plaintiff's petition asserts a cause of action most appropriately denominated an action for money had and received. The suit simply seeks to enforce by judgment of the court the repayment of the money. It does not seek recovery of damages for the alleged fraudulent acts. Of the two main classifications of actions, the suit is one upon implied contract. Where one person procures money of another through fraud, the latter may waive the tort and sue in contract for money had and received. 1 C. J. 1037. The contract sued on is within the classification discussed in Corpus Juris under the head of contracts "implied in law, or quasi or constructive contracts." As therein said, they "are a class of

obligations which are imposed or created by law, without regard to the assent of the parties bound, on the ground that they are dictated by reason and justice, and which are allowed to be enforced by action ex contractu. They rest solely on a legal fiction, and are not contract obligations at all in the true sense, for there is no agreement; but they are clothed with the semblance of contract for the purpose of the remedy, and the obligation arises, not from consent, as in the case of true contracts, but from the law or natural equity. So, when the party to be bound is under a legal obligation to perform the duty from which his promise is inferred, the law may infer the promise even as against his intention." 13 C. J. 244.

The same authority says: "Where public moneys have been paid in violation of the law they may be recovered in an action for money had and received." 41 C. J. 51. Again the same authority says: "Where one has received money from a third person through some mistake or fraud by law or authority, which, but for the mistake or fraud, would have vested the right to the money in plaintiff, plaintiff may recover such money in an action for money had and received." 41 C. J. 41, § 21.

One of the authorities cited in support of the text is Jeff Davis County v. Davis (Tex. Civ. App.) 192 S. W. 291, 294. This was a suit by a county against a sheriff and his bondsmen to recover money paid the sheriff without lawful authority. Principles applicable to that case, it is believed, are likewise so here. As indicating the nature of this suit the court said: "His [i. e., the sheriff's] liability arose upon an implied contract to refund the same as for money unlawfully had and, received from the county."

If it be the proper construction that the cause of action is one for money had and received, then it is correct to say that the acts of fraud relied on do not constitute the cause of action, but simply the evidence to show the existence of the duty to refund. It scarcely requires the citation of authority to support the proposition that, unless the fraud be the gist of the cause of action, its existence is not sufficient to support venue. In Slaughter v. Oakes (Tex. Civ. App.) 203 S. W. 405, it was held that, in order to fix venue out of the county of defendant's residence, under exception 7 of article 1995, it is necessary that the fraud alleged be the gist of the cause of action. Also in Sheffield v. Rousey (Tex. Civ. App.) 153 S. W. 653, 655, the court, in sustaining a plea of privilege, said: "We have reached the conclusion that the alleged fraud is not the gist of and does not constitute the plaintiff's cause of action. His cause of action rests upon the fact he has been and is unlawfully deprived of the possession and custody of his minor child; and, in so far as his right of recovery is concerned, it is immaterial that the defendants, by false and fraudulent representations, induced him to consent to the removal of the child from Brown county."

Where fraud does not enter into the cause of action, venue cannot be fixed by showing as an independent matter that there was fraud connected with the cause of action, or in some way incident thereto. Latshaw v. McLean (Tex. Civ. App.) 238 S. W. 1003. As said by Judge Walthall in Neal v. Barbee (Tex. Civ. App.) 185 S. W. 1059, 1061: "Where, however, a party elects to sue on his contract rather than for his damages for fraud, trespass, or conversion, he waives the fraud, trespass, or conversion as a fact fixing the venue of his suit."

In passing upon this question only the facts alleged in the controverting affidavit should be looked to, and nothing is added to their effectiveness to show venue by designating the facts as fraudulent. Mere general statements that fraud was committed should not properly be given weight in passing upon the sufficiency of the facts. See Baines v. Mensing Bros. Co., 75 Tex. 200, 12 S. W. 984.

From the conclusions announced, it follows, as the writer sees it, that the plea of privilege was properly sustained, and the judgment of the trial court should be affirmed.