**KLINDWORTH et al. v. O'CONNOR et al.**
**No. 14310.**

Court of Civil Appeals of Texas.
Dallas.

March 9, 1951.

Dissenting Opinion March 13, 1951.

On Rehearing May 4, 1951.

Further Rehearing Denied June 1, 1951.

Willis & Lewis, Alfred Sallinger and B. M. Bates, all of Dallas, for appellants.

O'Connor & Douglass, Dallas, for appellees.

BOND, Chief Justice.

This is a suit in equity, brought by plaintiffs (appellees) Ted C. O'Connor and Orval M. O'Connor by next friend T. J. O'Connor in a district court of Dallas County against L. W. Klindworth, Jose Rodriquez and Rosemond Rodriquez (husband and wife), W. L. Sterrell, Sixto Espinosa, Geo. V. Basham, W. W. Fair, Jr., W. M. Holland, Mary Fuller and Roy Fuller (husband and wife), J. Oran Carter, Wm. T. Sargent, Guardian Federal Savings & Loan Association of Dallas, Hexter Title & Abstract Company, Stewart Title Company, and Porter Lindsley, individually and trading and doing business as J. W. Lindsley & Company. In limine pretrial, the trial court held that the plaintiff Orval M. O'Connor was mentally competent to prosecute his suit in his own name rather than by next friend; whereupon Orval M. O'Connor for himself personally and individually, intervened by amended petition as a party-plaintiff.

In plaintiffs' petition as amended they allege ownership (with their sister Mary Fuller, wife of Roy Fuller) of the property known in the record as the "Carlisle Street property," hereinafter more fully described; that on or about August 2, 1946 their signatures and acknowledgments were obtained to a deed to L. W. Klindworth to said property by fraud, misrepresentation of material fact, false premise and duress, and for a "disgraceful, unconscionable, and grossly inadequate price"; and that at the time of and prior to, and at all times since the execution of the deed, the plaintiffs were and are now imbeciles, weak in mind, ignorant, illiterate and uneducated, uncouth and unreliable, with minds of small children, associating with children rather than with grown people. That plaintiffs' minds are so deficient that they have no discretion or ability to know and realize the consequences of their act, and are unable to transact any business; that on the occasion in question they did not know and were unable to comprehend the effect of the conveyance of their Carlisle Street property, or the effect of any of the transactions in relation thereto.

The plaintiffs further allege that the defendants Jose and Rosemond Rodriquez and L. W. Klindworth, well knowing the mental status of Ted C. and Orval M. O'Connor, maliciously and fraudulently caused them to execute the deed to the Carlisle Street property, which was of the approximate value of $10,000, for the pitiful sum of $3,000; and as a part of the scheme and fraudulent transaction and in connection with said sale, sold to the plaintiffs other property, on McCoy Street in a colored section of the City of Dallas, of the approximate value of $1,500 for $6,400. That in carrying out said plan and scheme, the defendants withheld from the plaintiffs the cash consideration that would have come to them out of the purported sale of the Carlisle Street property, and thereafter applied such sum to the purchase price of the McCoy Street property.

The plaintiffs further allege that the defendants, the Rodriquezs and Klindworth, in their malicious scheme and plan to obtain the deed and possession of said property at the inadequate price, represented to them, that the City and County of Dallas had a large judgment against their father and a lien against the Carlisle Street property amounting to more that $1,000 and, unless they sold said property to their friend Klindworth, the City and County of Dallas would take said property away from them and they would not realize anything out of it; and, further, that if and when they sold to Klindworth, he would pay all indebtedness against the property and they would get the $3,000 net as their part.

The plaintiffs' petition is lengthy, quite verbose, relating fraudulent and malicious representations chargeable to the defendants, Rodriquezs and Klindworth, which induced plaintiffs to execute the deed to the Carlisle Street property and enter into the further agreement to purchase the McCoy Street property, and to execute notes and deeds of trust, involving all of the defendants, incident to such transactions. We pretermit further recitations from plaintiffs' petition.

The plaintiffs prayed for cancellation and revocation of all the deeds, notes, and deeds of trust owned or held by the defendants, and alternatively, for damages, actual and exemplary, against the defendants,— the Rodriquezs and Klindworth. As to the other named defendants, supra, they were vouched into the suit by the plaintiffs to enable full relief of cancellation of all purported obligations, notes, deeds, deeds of trust, claims, or interests, which they or either of them may have and hold against the plaintiffs and the Carlisle Street property.

█ The defendant Klindworth in answer to plaintiffs' petition urged numerous special exceptions which seem not to have been presented to, or acted upon, by the trial court,—thus waived; and, answering jointly to the merits with the other defendants, denied the unsoundness of mind and other incompetency of the plaintiffs to enter into the transactions as alleged in plaintiffs' petition; and, in the alternative, that if the plaintiffs were insane or otherwise incompetent to enter into said transactions or to execute the contracts and conveyances as alleged, such mental status was unknown to them; that they acted in good faith in all of the transactions which they severally or jointly had with the plaintiffs, without fraud or imposition and for a valuable consideration,—without notice of such mental infirmities; that such contracts and conveyances should not be set aside without equitably restoring the defendants to their original position.

The record here shows that the defendants, W. L. Sterrett, W. W. Fair, Jr., W. M. Holland, Mary and Roy Fuller, J. Oran Carter, Wm. T. Sargent, Guardian Loan Association and Stewart Title Company made no appearance by answer or otherwise to the suit.

The roll of the transactions involved shows that on August 2, 1946 Ted C. O'Connor and Orval M. O'Connor and their sister Mary Fuller were joint owners of a Lot or tract of land located on Carlisle Street in the City of Dallas, Texas; being 40 ft., Lot 2, and 10 ft., Lot 3, B'ock 16,966 of Bowser & Lemmon Oak Lawn Addition to said City, and designated in the record as the "Carlisle Street property." The plaintiffs and their sister inherited this property from their father, J. A. O'Connor who, the record shows, died in 1940 intestate, in Dallas County. No administration was taken out on his estate, and it seems there was no necessity therefor.

On June 26, 1946, the appellants Jose Rodriquez and Rosemond Rodriquez (husband and wife) were real estate agents and, as such, obtained from the O'Connor brothers and their sister (Mrs. Fuller) a listing of the Carlisle Street property for sale and in course of advertising, secured L. W. Klindworth as a purchaser at the sum of $3,000, and on August 2, 1946 effected the sale by having the O'Connors and Mary Fuller (joined by her husband Roy Fuller) to execute a general warranty deed to L. W. Klindworth. The deed and the closing disbursement of the sale were handled by Hexter Title & Abstract Company; and after deducting $725 City Taxes, $228.13 State and County taxes, and $229.13 for real estate commission, title policy, recording fees, etc., from the $3,000 cash consideration recited in the deed, there was left due to the three grantors the sum of $1,817.74, or $605.91 to each of the O'Connor children. In accordance therewith, Hexter Title & Abstract Company issued checks on its account at Republic National Bank at Dallas, Texas to Orval and Ted O'Connor;—however, endorsing thereon as of date September 14, 1946 "For deposit only" to Stewart Title Company, to whom the checks were delivered.

On September 11, 1946 L. W. Klindworth executed a warranty deed to Ted C. O'Connor and Orval M. O'Connor to a lot or tract of land in the City of Dallas,—designated

in the record here as the "McCoy Street property," being 41 ft. by 91½ ft. The consideration therefor recited to be the sum of $5,750, of which $1,100 was cash, and two notes executed by Ted and Orval O'Connor, one in the sum of $2,500 payable to the Guardian Federal Savings & Loan Association of Dallas, and the other, a second lien note in the sum of $2,150, payable to L. W. Klindworth. The $1,100 cash seems to have been paid by the Stewart Title Company out of plaintiffs' deposits, or escrow fund held by it, evidenced by the checks of Hexter Title & Abstract Company. The deed further recites that the $2,500 note payable to Guardian Federal Savings & Loan Association was for cash paid by L. W. Klindworth. Photographs accompany the record,—depicting the houses on the two aforesaid lots.

On October 30, 1946 Klindworth conveyed the Carlisle Street property to Sixto Espinosa for a purported consideration of $6,950, of which $1,350 was cash, one note in the sum of $3,000 payable to Geo. V. Basham, secured by vendor's and deed of trust liens, and one note in the sum of $2,600 payable to L. W. Klindworth, secured by a secondary vendor's and deed of trust lien. On November 4, 1947, perforce of a judgement entered in the Justice Court of Dallas County (over which the Honorable W. L. Sterrett was Justice of the Peace) in favor of L. W. Klindworth against Ted C. and Orval M. O'Connor in forcible entry and detainer suit; the plaintiff in the judgment (Klindworth) was decreed possession of the McCoy Street property;—possession stayed by injunction in the present suit.

This cause was tried to a jury on special issues, the jury finding: (1) That Ted C. O'Connor did not have sufficient mind and memory to understand the nature and effect of his act in executing the deed in question to L. W. Klindworth; (2) that Rosemond Rodriquez acted with malice in making the representation to Orval M. O'Connor that the Carlisle Street property would be taken away from plaintiffs for taxes; (3) that Rosemond Rodriquez knew that Ted C. O'Connor did not have mental capacity to execute the deed to the Carlisle Street prop-

erty at the time the deed was executed; (4) that L. W. Klindworth in purchasing the property from Ted C. O'Connor acted with malice,—"malice" being defined by the court: "Ill-will or bad or evil motive, or such gross indifference to the rights of another as will amount to a willful or wanton act, done intentionally and without just cause or excuse"; (5) that the reasonable cash market value on August 2, 1946 of the Carlisle Street property was $4,500; (6) that Rosemond Rodriquez knew on August 2, 1946 that Ted C. O'Connor did not have mental capacity to execute the deed to Klindworth; (7) that Rosemond Rodriquez acted with malice in the transaction; (8) that Ted C. O'Connor should be paid exemplary damages in the sum of $1,000 by Rosemond Rodriquez; (9) that L. W. Klindworth knew on August 2, 1946 that Ted. C. O'Connor did not have mental capacity to execute the deed in question to him; (10) that Klindworth acted with malice in the transaction; and (11) that Ted C. O'Connor should be paid exemplary damages by Klindworth in the sum of $5,000.

On motion for judgment upon the findings of the jury, the court entered judgment as to Orval M. O'Connor against Jose Rodriquez and Rosemond Rodriquez, jointly and severally, for actual damages in the sum of $500, and against Rosemond Rodriquez for exemplary damages in the sum of $1,000. In the case of Ted C. O'Connor, the court entered judgment in his favor against L. W. Klindworth, Jose Rodriquez and wife Rosemond Rodriquez, jointly and severally, for actual damages in the sum of $500, and against Rosemond Rodriguez for exemplary damages in the sum of $1,000, and against L. W. Klindworth for exemplary damages in the sum of $5,000. As to the other named defendants, the court entered judgment in their favor, in that, the plaintiffs take nothing as to them and that they be discharged with their costs.

To all of which judgment the defendants Jose and Rosemond Rodriquez and L. W. Klindworth perfected separate appeals,— the Rodriquezs prosecuting their appeal by cost bond, Klindworth by cost and supersedeas bond payable to Ted C. O'Connor.

The plaintiffs counter-assigned error to the action of the court in not revoking the deeds in question and equalizing the equities among all the parties, and duly perfected their appeal as against all defendants.

It will be observed that the award to Orval M. O'Connor against Jose and Rosemond Rodriquez for actual and exemplary damages is based upon actionable fraud in procuring the real estate involved in this suit,—controlled by Art. 4004, Vernon's Ann.Civ.St.; and in the case of Ted C. O'Connor for damages actual and exemplary against L. W. Klindworth, Jose Rodriquez and Rosemond Rodriquez in tort action wherein the said defendants are shown to have acted willfully and maliciously in dealing with Ted C. O'Connor in the real estate transactions,—knowing him to be mentally incompetent to transact such business.

Summarizing the evidence favorable to the findings of the jury and judgment of the trial court: Numerous witnesses gave testimony of probative effect that Ted C. and Orval M. O'Connor have minds of children and continuously play with small children rather than associate with grown people; that they are incompetents without sufficient mental ability to understand the nature of their acts, and incapable since birth to enter into any substantial business transaction. Ted and Orval were bachelors, more than forty years of age, their reasoning and judgment impaired, easily influenced and imposed upon; were imbeciles, incapable of judging the fairness of business transactions.

■■ While imbecility or weakness of mind, in itself, does not necessarily incapacitate one from conveying his property, yet when there is evidence tending to show imposition or fraudulent misrepresentation of a material fact, as here, it is not to be doubted that weak understanding of the transaction in which such person is engaged may be considered by the trier of facts in estimating the fairness of the transaction. The mental incapacity must be shown to have existed at the time of the transaction, but evidence as to the person's mind before

and for a reasonable time after the transaction is admissible as a fact tending to prove that incapacity existed on the date inquired about. Beville v. Jones, 74 Tex. 148, 11 S.W. 1128; Armstrong v. Burt, Tex.Civ.App., 138 S.W. 172; Cardinal v. Cardinal, Tex.Civ.App., 131 S.W.2d 1005; Self v. Becker, Tex.Civ.App., 195 S.W.2d 701, error refused. The capacity of a grantor is usually a question of fact. White v. White, 141 Tex. 328, 172 S.W.2d 295. A person may be quite capable of performing certain functions of the mind, yet incapable as to others. "The general definition of the term 'mental capacity' seems to contemplate the ability to understand the nature and effect of the act in which a person is engaged and the business he is transacting." Gray v. Allen, Tex.Civ.App., 243 S.W. 684, 686.

■ In the case of Ted C. O'Connor, the trial court in the charge, gave the meaning of the term "mental capacity" to be: "That at the time of executing the instrument in question the person executing such instrument must have had sufficient mind and memory to understand the nature and effect of his act in executing the instrument in question." Thus, based upon such definition, the court submitted to the jury: "Special Issue No. 1: On August 2, 1946 at the time Ted C. O'Connor executed the deed to the Carlisle Street property, did he have mental capacity? If you find from a preponderance of the evidence that he did not have mental capacity, you will answer this issue 'No.' If you have not so found and so stated, you will answer it 'Yes.'" The jury answered "No." We are of the opinion that the issue and definition given to the term "mental capacity," clearly submitted the primary issue as to Ted C. O'Connor's incompetency, and that the finding of the jury is supported by the evidence.

■■ "Compensation for injury, loss or prejudice is the end which ordinarily is sought to be accomplished by an awarding of damages, whether for breach of a contract or for a tort. The recovery is not limited to compensatory damages, however, where in a tort action the defendant is shown to have acted wilfully, maliciously

or fraudulently; the plaintiff in addition to compensation is entitled to recover exemplary or punitive damages. Accordingly, it is held that damages of this character may be awarded in actions arising out of personal injuries, assaults, the wrongful taking of personal property, trespass to realty, and many other torts which may be characterized by malice or wilful wrongdoing." 13 Tex.Jur. p. 236, § 129.

The evidence further shows that at the time of the transaction in question there was due and owing to the City and County of Dallas delinquent taxes against the Carlisle Street property of approximately $1,000, for which suit had been filed by the City against the elder O'Connor. Mr. Cullom, Tax Assessor and Collector of the City of Dallas, testified that the taxes had not been paid, but that "Before we would foreclose on anybody's taxes we like to know the circumstances, and as I recall it, Mr. Douglas (deputy) did go out and talk possibly to Mr. O'Connor, at least to the boys, * * * and made a written report to me on it, * * *. Q. Now, in that report and in the investigation made on J. A. O'Connor, do you recall what you found out as to his condition? A. Only in a vague way. It was rather, as I called it, a pathetic situation, and it seemed that there were no earnings going on among any of the family, and those very facts had a lot to do with the City holding off and not foreclosing on the property for the years that they didn't,—when those taxes were due."

The evidence further shows that Orval O'Connor knew about the taxes not having been paid but did not know anything about foreclosure of lien; and when Mrs. Rodriquez first called upon him to sell the Carlisle Street property, he had not theretofore discussed the matter with her. He testified:

"Mrs. Rodriquez came down to see me about selling it * * *.

"Q. Can you recall the first time she came down to talk with you with reference to this property? A. Well, she just came down to my house, just drove by and came up to my house and told me she had heard that my house was going to be taken away from me for taxes, and that she knew a man that would buy the house from me.

"Q. Did she tell you the man's name at that time? A. Not at that time.

"Q. As a result of that conversation did you since find out who that man was? A. I did.

"Q. Who was it? A. A Mr. Klindworth. * * *

"Q. What did the Rodriquezs tell you with reference to having to sell this property? A. They told me the City was going to take it away from me for taxes and I had better sell the place for anything I could get out of it, or I would be sitting out in the middle of the street, and no property or no nothing."

Orval further testified that he believed the statement made by the Rodriquezs to be true, and that he had a like conversation with Mr. Klindworth before signing the deed to Klindworth.

■ In submitting the issues in the case of Orval M. O'Connor, the trial court gave in the charge that: "By the term 'malice' as used in this charge, is meant ill-will, or bad or evil motive, or such gross indifference to the rights of another as will amount to a willful or wanton act, done intentionally, and without just cause or excuse"; thus submitted to the jury: "Special issue No. 2: Do you find from a preponderance of the evidence that before the signing of the deed to the Carlisle Street property, Mrs. Rodriquez represented to Orval O'Connor that the Carlisle Street property would be taken away from the O'Connors for taxes?" The jury answered "Yes"; and to accentuate the issues, the trial court submitted and the jury found that such representation was a material matter, that same was false, that Orval believed same was true, and that he relied upon same to his injury. We are of the opinion that the issues submitted were pertinent inquiries and the findings of the jury are fully supported by evidence.

■ Actionable fraud exists where one makes a false representation of a material fact knowing it to be false, or as of his own knowledge when he does not know whether it is true or false, with the intention to induce the person to whom it is made, in reliance thereon, to do, or to re-

frain from doing something to his pecuniary hurt, when such person is thereby deceived and induced to do, or refrain, to his damage. Panhandle & Santa Fe R. Co. v. O'Neal, Tex.Civ.App., 119 S.W.2d 1077, error refused. It has been said that " * * fraud is so multiform as to admit of no rules or definitions, and hence equity leaves the way open to punish frauds and redress wrongs perpetrated by means of them in whatever form they may appear." Varner v. Carson, 59 Tex. 303, quoting Bigelow on Frauds. Judge Simpkins, Contracts of Sale, defines fraud: "Fraud is an act or concealment involving a breach of legal duty, trust or confidence justly reposed, and from which injury results to another, or by reason of which an undue and unconscientious advantage is taken of another." See, Russell v. Industrial Transportation Co., 113 Tex. 441, 251 S.W. 1034, 258 S.W. 462, 51 A.L.R. 1; 20 Tex.Jur. p. 6, secs. 1, 2. False affirmation of material fact, made for the purpose of inducing a bargain which actually accomplishes the purpose intended, will give ground for an action in damages. United States Pipe & Foundry Co. v. City of Waco, Tex.Civ.App., 100 S.W.2d 1099, affirmed 130 Tex. 126, 108 S.W.2d 432. Ordinarily mere expression of opinion is not a representation upon which a contracting party is entitled to rely, since he is assumed to be *equally able to form his own opinion;* but, where the opinion is made in bad faith, made for the purpose of inducing a bargain, with evil motive or gross indifference to the rights of the other party, such expressed opinion becomes a material fact issue, where the other party acts thereon and is deceived thereby to his injury. Misrepresentation of law may be treated as misrepresentation of fact where the representer had superior knowledge and the representee regarded the representation as being one of fact. Bankers Life & Loan Ass'n v. Pitman, Tex.Civ.App., 115 S.W.2d 1008. A malicious act is closely related to fraud and partakes of the same elements of ill-will, mischief and indifference to the rights of others, wantonly and intentionally done to deceive. Such, we think, is forcibly brought forward here, due to the mental condition of the O'Connor boys.

So applying "malice" as here defined by the court, and the O'Connor boys, as the evidence discloses, being imbeciles, incapable of judging the fairness of business, with minds of children, it could hardly be doubted that when the Rodriquezs approached Orval for the listing of the O'Connor property, and related to him the delinquency of the father as to the City taxes and that their Carlisle Street property would be taken away from them, they were acting in bad faith for the sole purpose of inducing the O'Connors to sell; and certainly, as disclosed by the record, with gross indifference to the best interests of the O'Connor boys. What other motive could the real estate agents and the purchaser L. W. Klindworth have had, than to frighten or deceive the "boys,"—that they would be, as Orval said, "sitting out in the middle of the street, and no property, or no nothing"?

We overrule appellants' various assignments of error to the action of the trial court.

▆▆ Appellees counter-assign error to the action of the trial court in overruling their motion for judgment revoking the real estate transactions, claims, notes, deeds of trust, and all liens on the Carlisle Street property, and adjusting equities among all parties thereto. The evidence is uncontroverted that the defendant Sixto Espinosa purchased the Carlisle Street property from the defendant Klindworth on October 30, 1946, only a short time after its purchase by Klindworth, for a recited consideration of $1,350 cash and the execution of two notes, with vendor's and deed of trust liens against the property, one in the sum of $3,000 payable to the defendant Geo. V. Basham, and the other of $2,500 payable to L. W. Klindworth. The evidence is sharply controverted that Espinosa did not know the plaintiffs were incompetent to make the deeds. The jury decided the issue in favor of the defendant. And there is no evidence that the defendant Basham knew of the infirmity of the O'Connor boys at the time of the transaction in question. We overrule appellees' counter-assignments.

From what we have said, we are of the opinion that the judgment of the trial court should be affirmed, and that the temporary restraining order as affects possession of the McCoy Street property should be dissolved. It is so ordered; all costs taxed against appellants.

CRAMER, J., dissents.

CRAMER, Justice (dissenting).

I respectfully dissent from the majority opinion herein. "The infliction of punishment in civil litigation prosecuted by private parties by the assessment of punitive damages is an anomaly in the common law and is totally unknown to the Roman and Civil Law. Such damages are not recoverable as a matter of right, the granting or denial thereof being wholly subject to the discretion of the jury. With respect to amount, the standard is generally said to be that the award must be adequate to punish the defendant for his reprehensible conduct. In addition, the requirement has been adopted by some courts that the amount of punitive damages awarded must bear some reasonable relation to the amount of actual damages. * * *." 22 Texas Law Review 235, and cases there cited.

The above common law rule has been, as provided by Art. 1, V.A.C.S., changed in real estate transactions. Art. 4004, V.A. C.S., provides as follows: "Actionable fraud in this State with regard to transactions in real estate or in stock in corporations or joint stock companies shall consist of either a false representation of a past or existing material fact, or false promise to do some act in the future which is made as a material inducement to another party to enter into a contract and but for which promise said party would not have entered into said contract. Whenever a promise thus made has not been complied with by the party making it within a reasonable time, it shall be presumed that it was falsely and fraudulently made, and the burden shall be on the party making it to show that it was made in good faith but was prevented from complying. therewith by the act of God, the public enemy or by some equitable reason. All persons guilty of such fraud shall be liable to the person defrauded for all actual damages suffered, the rule of damages being the difference between the value of the property as represented or as it would have been worth had the promise been fulfilled, and the actual value of the property in the condition it is delivered at the time of the contract. All persons making the false representations or promises and all persons deriving the benefit of said fraud, shall be jointly and severally liable in actual damages, and in addition thereto, all persons wilfully making such false representations or promises or knowingly taking advantage of said fraud shall be liable in exemplary damages to the person defrauded in such amount as shall be assessed by the jury, not to exceed double the amount of the actual damages suffered."

In my opinion, this statute applies to the present case; in fact, is exclusive in all real estate transactions.

It takes the question of reasonableness of exemplary damages out of a jury verdict where the amount found by the jury does not exceed double the amount of the actual damages. If the amount found by the jury is within the range of the statute, it is not, and cannot be excessive; if more than double the actual damage is assessed, by force of the statute it is excessive to that extent.

Applying the statute to this case, the amount of exemplary damages allowed Ted C. O'Connor against L. W. Klindworth of $5,000 is ten times the $500 actual damages found by the jury and allowed in the judgment. By force of the statute, Art. 4004, supra, it is therefore excessive in the sum of $4,000.

For that reason the judgment below should have been reformed so as to eliminate the excessive damages.

On Motion for Rehearing.

YOUNG, Justice.

 I concur with the conclusion reached by Associate Justice CRAMER that the amount of exemplary damages allowed Ted C. O'Connor against L. W. Klindworth of $5,000 is excessive to the extent of $4,000. Art. 4004, supra, is appli-

cable thereto and his recovery in matter of exemplary damages should be reduced to double the amount of actual damages suffered by Ted. C. O'Connor; in other words, to the sum of $1,000. Chief Justice BOND dissenting.

The motion for rehearing is therefore granted in part and the judgment below reformed so as to eliminate therefrom $4,000 of such $5,000 item, and as reformed is affirmed.

BOND, Chief Justice (dissenting).

It will be observed that the judgment of the trial court as to Ted C. O'Connor, a non compos mentis, is not based on contract, but founded in tort. Ted C. O'Connor was an incompetent, unable to enter into any contract with the defendants in reference to real estate transactions. The appellants-defendants knew of his incompetence;—hence any contract with him is void ab initio.

"Generally speaking, a person of unsound mind is precluded from enjoying any rights or performing any duties which involve the exercise of reason. * * *." 24 Tex.Jur., p. 379, sec. 6. Ted C. O'Connor's cause of action, because of his incompetence, was established independently of contract; and all persons connected therewith in the commission of the tort cannot defend their fraudulent conduct upon contract, thus escaping liability for the incompetent's damage, actual or exemplary, in absence of showing or ratification or some legal relation sufficient to charge the incompetent.

The right to recover damages for tortious conduct by taking advantage of such unfortunate insane or incompetent person may be brought by a representative of such person, either upon contract or in tort, at his option. The statute, Art. 4004, R.S., providing for exemplary damages in a sum not to exceed double the amount of actual damages, applies only where the suit is grounded upon contract involving land transactions. Here, Ted C. O'Connor's suit, if in fact it may be characterized as either upon contract, or in tort, the judgment of the trial court upon findings of the jury of his incompetency and the fraud incident to the two transactions was, indeed, a judgment in tort concretely and forcibly portrayed in the pleadings and evidence.

The limitation of exemplary damages for such inducing fraud as to Ted C. O'Connor has no application.

It will be seen from the wording of Art. 4004, supra, that damage in regard to transactions in real estate is expressly based upon contract, and that, too, by competent parties; "made as a material inducement * * * *to enter into a contract*"; and the limitation of exemplary damages "not to exceed double the amount of the actual damages suffered", does not apply to tortious actions instituted by or for an insane or incompetent who at the time was unable to comprehend the legal effect of his action in making the contract, or the consequences of the fraud perpetrated upon him by which he suffered the loss of his property. (Emphasis supplied.)

In a very recent case, Briggs v. Rodriguez, Tex.Civ.App., 236 S.W.2d 510, 514, writ refused, n. r. e., briefly stated, the Rodriguezs sought rescission of a deed to real estate upon the ground of inducing fraud, and in tort action for damages. On trial to a jury the Rodriguezs were found mentally incompetent to contract (as was found by the jury in the case here), and, the action having been brought upon contract as well as in tort, the trial court entered judgment for actual damages in the sum of $300, and $1,000 exemplary damages against the defendant. The San Antonio Court of Appeals, opinion by Mr. Justice Norvell, says:

"It is a general rule that a recovery of exemplary damages can not be based upon a mere breach of contract. This rule should, however, be restricted to *actual contracts* and not to fictitious ones. There is a distinction between a case in which A agrees to pay B $20 and then fails to do so, and one in which A at the point of a gun takes $20 from B and then fails to give it back. Any promise that a holdup man makes to return money to his victim is a fiction pure and simple, and it is a bit incongruous to speak of one seeking a return of money thus illegally taken from him as having 'waived the tort and sued in assumpsit.' 1 McDonald, Texas Civil Practice, 165. * * *

"The rule allowing exemplary damages, where it is shown that a defendant acted wilfully, maliciously or fraudulently, is one of general application. It is recognized by the common law and is not dependent upon statute. 13 Tex.Jur. 236, Damages, § 129. Its effectiveness is in no way dependent upon common law forms or classes of actions which have never been used or recognized in Texas, 2 Gammel's Laws 262; Walcott v. Hendrick, 6 Tex. 406; 1 Tex. Jur. 610, Actions, § 4, and it seems somewhat academic to now inquire as to whether or not the present action would have been classified as one in assumpsit or an action of trespass on the case at common law. The trial judge and the parties below (as here) treated this as a tort action. The jury found that the elements of fraud and malice were present and should effectively answer appellant's contention. Stephens County v. H. C. Burt & Co., Tex.Civ.App., 19 S.W.2d 951. * * *" (Emphasis supplied.)

The judgment of the trial court was affirmed, awarding to the incompetent more than three times the amount of his actual damages sustained.

It is academic that an Appellate Court has no more right to reduce an award for exemplary damages as found by a jury than it has to increase the actual damages found without demanding a remittitur or reversal of the cause. In reviewing this record, an increase in the actual damages sustained by these unfortunate boys would have been more in keeping with the portrayed record evidence. However, be that as it may, if, perchance, it could be said that the suit, both as to Ted C. and to Orval M. O'Connor, is determinable under contract and not in tort, then appellee's counter assignments to the action of the court in not awarding them a rescission of both real estate transactions should be sustained and the cause remanded for trial upon the most advantageous remedy to them by rescission, thus equitably restoring them to their original position.

In Wright v. Matthews, Tex.Civ.App., 144 S.W.2d 367, 370, the appellant Matthews, a non compos mentis, instituted suit by guardian, seeking to set aside a deed and to cancel deeds of trust executed by him during his incompetency. The jury found him incompetent, and that the deed was not executed without fraud or imposition. In keeping with the jury's findings, the trial court canceled, set aside, and held for nought the deed and deeds of trust in suit; but on the pleadings and findings of the jury, required the guardian to refund taxes paid by the grantees to reimburse them as innocent parties to the real estate transactions. The appellant there requested four special issues inquiring whether the grantee in the deed acted (1) in good faith, (2) without fraud or imposition, (3) for a valuable consideration, (4) without notice of the infirmity of the grantor. The court said: "Had these issues been submitted to the jury and answers favorable to appellant returned, they would not have prevented the setting aside of the deed from Mrs. McGinley to Kathryn Hughes, but would have only required that Kathryn Hughes be first equitably restored to her original position."

Art. 5561a, sec. 7, Vernon's Rev.Civ.St., provides: "A contract valid on its face, made with, or likewise a conveyance made by a person, who at the time has not been legally adjudged to be of unsound mind, or otherwise incompetent, and who is subsequently shown to have been insane, or otherwise incompetent, at the time of the execution of such contract or conveyance, shall not be set aside or avoided where any such contract or conveyance has been executed in good faith in whole or in part, and was entered into in good faith and without fraud or imposition and for a valuable consideration, without notice of such infirmity, unless the parties to such contract or conveyance shall have been first equitably restored to their original position. * * *"

Reviewing this record, it will be seen that Ted C. O'Connor, Orval M. O'Connor, and their sister Mary Fuller (joined by her husband Roy Fuller), executed the deed in question to the Carlisle Street property (photograph in the record) to L. W. Klindworth, reciting a consideration of $3,000; the deed is dated August 2, 1946. On August 7, 1946, the defendant Hexter Title Company, at the instance of the defendants

Klindworth and the Rodriquezs, drew three checks on its account at Republic National Bank of Dallas,—one check payable to order of Orval M. O'Connor, one to Ted C. O'Connor, and one to Mary Fuller, each in the sum of $605.91. The checks to Orval and Ted O'Connor were each endorsed "For deposit only," addressed to Stewart Title & Guaranty Company, dated 9-14-'46, and were cashed at the Mercantile National Bank of Dallas by said Guaranty Company; whilst the check to Mary Fuller was not so endorsed, but was directly delivered to her. Then, on August 30, 1946 L. W. Klindworth by general warranty deed conveyed the "Carlisle Street Property" to the defendant Sixto Espinosa, reciting a consideration of $6,850, of which $1,350 was purported cash, one vendor's lien note in the sum of $3,000 payable to the defendant George V. Basham, and another note in the sum of $2,500 payable to the defendant Klindworth. Espinosa testified that he received the $1,350 cash consideration mentioned in the deed from Mr. Basham, but could not say that he gave him any security therefor. Thus it will be seen that the capital investment of Klindworth, of $3,000, in this fraudulent transaction was placed in Basham, that he may defend as an innocent lienholder, which he plead in his answer.

Then it will be seen that on September 11, 1946 L. W. Klindworth executed the deed to Ted C. and Orval M. O'Connor to the "McCoy Street property" (photograph in the record), for a recited consideration of $5,750, of which $1,100 was purported cash, $2,500 cash paid by the Guardian Federal Savings & Loan Association to Klindworth with a vendor's lien as a first and superior lien on said property, and executed another note in the sum of $2,150, subordinate and inferior to the Association note of $2,500. The record evidence shows that the defendant Klindworth, only a short time before, purchased the "McCoy Street property" for $2,500. Thus, again, in furtherance of his scheme to protect his capital investment of $2,500 in the "McCoy Street property", he gave ground for Basham to plead innocent lienholder in this suit.

It will be observed that in the two transactions the evidence is that the Guardian Federal Savings & Loan Association and the defendant Basham are apparently innocent purchasers and lienholders to the extent of their notes and the amount that Klindworth paid for the two pieces of property. Klindworth evidently hedging to the extent of his outlay in the two transactions. The jury having found that these transactions were fraudulently made and that the O'Connors entered into such transactions in a state of incompetency, they should be restored to their original position.

Further, the record shows that the O'Connor boys being unable to pay the installments on their deferred notes to Klindworth secured by deed of trust, the deed of trust was foreclosed, the "McCoy Street property" sold under the powers of deed, and Klindworth purchased the property for $3,000; thus the O'Connors were stripped of all their property by the fraudulent means, as found by the jury.

The record here justified the finding of the jury on the issue of exemplary damages, and the amount of $5,000 is not disproportionate to the amount of actual damages the plaintiff Ted C. O'Connor suffered in the two transactions. 13 Tex.Jur., p. 248, discusses the identical question as here involved, as follows:

"It has been found to be difficult to set any fixed or prescribed limits to the discretion of the jury or in fact to prescribe any rule whatever to guide them in assessing exemplary damages. The amount to be awarded in any case is measured by the rule of just punishment, rather than that of fair compensation. While the amount should be large enough to command respect for the law and to deter others from similar infractions, it should not be excessive or oppressive. Of course, the plaintiff may not recover exemplary damages in excess of the amount demanded in the complaint. The amount of exemplary damages should be reasonably proportioned to the actual damages sustained. The ratio in any particular case depends upon the facts; and necessarily much is left to the discretion of the jury."

In Cotton v. Cooper, Tex.Com.App., 209 S.W. 135, affirming the Court of Civil Ap-

peals, 160 S.W. 597, there was a verdict for $3,500 exemplary damages and $400 actual damages, and the judgment was sustained in both opinions.

In all fairness to this record and the judgment of the trial court, this cause should be affirmed as in our original opinion, which now has become the dissenting opinion of the writer. I respectfully adhere to our former opinion, and, in the alternative if need be, that the cause should be reversed and remanded for new trial.