**Anna I. HIBBETS et al., Relators,**

v.

**J. E. JOHNSON et al., Respondents.**

No. 7051.

Court of Civil Appeals of Texas.

Amarillo.

Jan. 3, 1961.

Rehearing Denied Feb. 6, 1961.

Monning & Monning, Amarillo, for relators.

Lumpkin, Watson, Dunlap & Smith, Amarillo, for respondent J. E. Johnson.

Wayne Bagley, Amarillo, for respondent State.

PER CURIAM.

This is an original mandamus proceedings by relators, Anna I. Hibbets et al., seeking to compel respondent, J. E. Johnson, County Judge of Armstrong County, Texas, to enter judgment on a jury verdict in relators favor.

This was a condemnation suit. After the jury had rendered its verdict in the County Court trial, the condemnors made a motion for a new trial. There was never any judgment entered but the trial judge granted the motion for new trial. Rule 300 of Texas Rules of Civil Procedure provides that where a special verdict is rendered, the court shall render judgment thereon unless set aside or a new trial is granted. Under this rule it is not necessary for the court to enter judgment before granting a new trial. Anchor v. Martin, 116 Tex. 409, 292 S.W. 877; Kennann v. Nelson, Tex.Civ.App., 278 S.W.2d 335.

It was the contention of the relators that there was no order granting a new trial during the term of court in which the

verdict was rendered. There is no showing just when the order granting a new trial was signed or filed with the County Clerk. The record shows the trial judge announced at the time the motion for new trial was presented that he was granting a new trial, and the only date shown in the order was the date of September 19, 1960, being the date the motion was heard. So, we believe we would be bound by the date in the order in the absence of a showing just when the order was actually entered. Why the order does not show when it was signed and the clerk cannot certify as to the date it was filed in the clerk's office, we do not understand.

On the original trial for condemnation it was agreed the condemnors had the right to condemn the property taken and the only issues to be submitted were the issues as to the amount of damages. The following issues as to damages and the answers thereto were as follows:

"Special Issue No. 1: From a preponderance of the evidence what do you find was the market value of the 8.2 acre strip of land condemned by the State for highway purposes at the time it was condemned, considered as severed land?

"Answer in dollars and cents.

"$10,150.00.

"Special Issue No. 2: From a preponderance of the evidence, what do you find was the market value of defendants' tract, containing 191.7 acres, of land, exclusive of the strip of land condemned, immediately before the strip was taken for highway purposes?

"Answer in dollars and cents.

"$38,340.00.

"Special Issue No. 3: Excluding increase in value, if any, and decrease in value, if any, by reason of benefits or injuries received by defendants in common with the community generally and not peculiar to them and connected with

their ownership, use and enjoyment of the particular tract of land across which the strip of land has been condemned, and taking into consideration the uses to which the strip condemned is to be subjected, what do you find from a preponderance of the evidence was the market value of the remainder of defendants' tract of land, containing 191.7 acres, immediately after the taking of the strip condemned for highway purposes?

"Answer in dollars and cents.

"$26,000.00."

The condemnees requested the court to enter judgment on the verdict of the jury. The condemnors presented a motion for new trial for the following reasons:

"First. Because the verdict is contrary to the law in that there is no evidence to support the jury's answer to Special Issue No. 2, wherein the jury found the market value of Defendants tract containing 191.7 acres of land exclusive of the strip of land condemned immediately before the strip was taken for highway purposes, to be $38,340.00.

"Second. Because the Jury's finding in Special Issues No. 2 and No. 3 are contrary to the evidence in that the evidence unmistakably shows that the Jury's finding in Special Issue No. 2 should be the same as their finding in Special Issue No. 3.

"Third. Because the amount of damages the Jury attempts to award the Defendants is excessive and contrary to law."

Then the attorney in presenting these three reasons stated as follows:

"The building of the road would not damage the remainder of the land. And on the basis of that, we ask for a new trial."

This clearly shows that it is the contention of the condemnors that they were entitled

to a new trial because there was no depreciation shown of the 191.7 acres after the condemning of the 8.24 acres. Consequently, there was no question raised as to the verdict of the jury concerning the value of the 8 acres taken. On the trial there were three witnesses who testified and they were Mr. Donnell for the condemnors and Mr. Moore and Mr. Wilson for the condemnees. They testified the value of the 191.7-acre tract before the taking of the 8 acres and after the taking was as follows:

| "Testifying Witness | Value Before | Value After |
|---|---|---|
| O. V. Donnell | $33,645.00 | $33,645.00 |
| Bill C. Moore | 38,352.00 | 23,970.00 |
| Mr. Wilson | 47,750.00 | 19,100.00 |
| The jury's verdict was: | 38,340.00 | 26,000.00" |

Since the motion for new trial was granted to the condemnors we must assume it was upon the ground that the building of the road would not damage the remaining 191.7 acres. It was not the building of the road that affected the damages to the remaining 191.7 acres; it was the taking of an irrigation well upon the 8.24 acres which was used to irrigate all the land. When the 8.24 acres containing the irrigation well was condemned, the 191.7 acres was reduced to a dry land farm and consequently damaged the value. No one can reasonably contend that the taking of the irrigation well, thereby making the remaining 191.7 acres dry land instead of irrigated land, would not damage the 191.7 acres.

The first thing to consider in this matter is whether the motion for new trial presented questions for consideration which would require the exercise of judicial discretion and then if the trial judge violated his clear duties under the law.

 It is the settled law of this state that a writ of mandamus will lie to correct the action of a trial judge where he acts in abuse of his discretion, or in violation of his clear duty under the law, and there is no adequate remedy by appeal. Stakes et

al. v. Rogers, 139 Tex. 650, 165 S.W.2d 81; City of Houston v. Adams, 154 Tex. 448, 279 S.W.2d 308.

 The order granting the motion for new trial stated the court, having been fully advised and having heard the argument of the attorneys, was of the opinion the motion for new trial should be granted. The condemnors having presented their motion for a new trial upon the point that the building of the road would not damage the land, we must assume that was the ground upon which the court granted the motion for new trial, and certainly there would be no adequate remedy by appeal from such order. The real question of damages as considered by the jury was the taking of the irrigation well that was on the 8.24-acre tract condemned so that the remaining 191.7 acres could not be irrigated, and to grant a new trial on the ground that the building of the road would not damage the remainder of the land, being the 191.7 acres was an abuse of his discretion and a violation of his clear duty under the law.

The writ of mandamus will be granted as prayed for.