The STATE of Texas, Appellant,

v.

Joyce STINSON et al., Appellees.

No. 7617.

Court of Civil Appeals of Texas.

Texarkana.

Jan. 26, 1965.

Rehearing Denied Feb. 23, 1965.

Samuel D. McDaniel, Asst. Atty. Gen., Austin, for appellant.

Traylor Russell, Russell & Perkins, Mt. Pleasant, for appellees.

FANNING, Justice.

A condemnation case. The State took for highway purposes 3.195 acres of appellees' 71 acre farm. The 3.195 acre tract taken contained two valuable springs that flowed into a large cistern covered by a pump house, and out of which cistern spring water for two residences and several pastures on the remainder of the 71 acre tract was provided. Trial was with the aid of a jury. The special issues submitted and the jury's answers thereto were as follows:

"SPECIAL ISSUE NO. 1.

"What do you find from a preponderance of the evidence was the reasonable market value on the 21 day of December, 1961 of the 3.195 acres of land, including all buildings and improvements thereon, condemned by the State for highway purposes, considered as severed land? Answer in dollars and cents.

ANSWER: $4500.00

"SPECIAL ISSUE NO. 2.

"What do you find from a preponderance of the evidence to be the market value of Defendants' tract of land, exclusive of the strip of land condemned for highway purposes, immediately before the strip was taken for highway purposes? Answer in dollars and cents.

ANSWER: $36,500.00

"SPECIAL ISSUE NO. 3.

"What do you find from a preponderance of the evidence was the market value of the remainder of the Defendants' tract of land, exclusive of the strip of land condemned, immediately

after the strip was taken for highway purposes? Answer in dollars and cents.

ANSWER: $20,075.00

"In answering Special Issue No. 3, you will exclude any increase in value, if any, and decrease in value, if any, by reason of benefits or injuries received by Defendants in common with the community generally, and not peculiar to them, and connected with their ownership, use any enjoyment of the particular tract of land across which the strip of land has been condemned, and taking into consideration the uses to which the condemned strip is to be subjected."

Judgment was rendered for appellees in accordance with said verdict after deducting the amount of the special commissioners' award previously withdrawn by the appellees. The State of Texas has appealed.

Appellant by its first point contends that there is no evidence to support the jury's answers awarding damages to the remainder of appellees' lands in an amount greater than $200.00. ($200.00 was the amount of damages to the remainder testified to by one of appellant's witnesses.) Appellees' first counter-point in reply is as follows:

"Where all witnesses for both land owner and the Condemnor testified fully as to the value of the strip taken and then all witnesses testified as to the value of the 'remainder' of the land, there was no error that would. necessitate a reversal of the case because the language 'exclusive of the strip of land condemned for highway purposes' was not used in determining the value of the remainder, and especially so since neither party made any objection to the evidence in the. trial of the case nor submission of Special Issues."

Appellees introduced the evidence of witnesses Embrey, Garrett, Cargill, Morris, Blankenship and Joyce Stinson, one of the appellee owners. These witnesses all duly qualified and were permitted to testify as to the values involved. Embrey testified as to the value of the 3.195 acre tract taken, and was then asked the question as to the value of the remainder of the Stinson property "excluding the 3 acres". Garrett, after testifying as to the value of the 3 acres taken, was then asked as to the value of "the remainder" of the Stinson property as of the date of the taking and the same is true of the witnesses Cargill, Morris, Blankenship and owner witness Joyce Stinson. Also where the State offered the evidence of its two expert witnesses Brown and Bloodworth, the State's counsel did not ask these witnesses questions as to the value of defendants' land "exclusive of the strip of land condemned". Also the State made no objections to the questions asked by defendants on the ground that these questions as to values were not precisely in the language of the Carpenter case (89 S.W.2d 194).

█ We think that merely because the value questions asked of the witnesses were not framed in the exact form of the special issues suggested in the Carpenter case that this would not prevent the testimony adduced as to values of the remainder from being deemed evidence of probative force under the record in this cause and especially so in the absence of objection to such testimony. In this connection see Rayburn, Texas Law of Condemnation, Sec. 135, and authorities referred to therein. Also see City of Houston v. Collins, Tex.Civ.App., 310 S.W.2d 697, no writ (1958), wherein it was stated in part as follows:

"Appellant has cited State v. Carpenter, Tex.Com.App., 126 Tex. 604, 89 S.W.2d 194, in support of his contention. The special issues in this case were framed in the exact form suggested in that case. As we see it, that

case laid down the law on the framing of the special issues to be submitted to the jury in cases where there is a taking of a part of a tract with resulting damages to the balance, so that there can be no double recovery of damages to the remaining tract. We cannot, however, find any basis in that case for the contention that the court intended to place the landowner in a verbal strait-jacket by having to refer to the land being taken as severed land whenever he referred to it in interrogating a witness about its value."

The findings of the jury on the issues submitted were within the values testified to by appellees' witnesses. We overrule appellant's first point.

Appellant contends by its second and fourth points to the effect that the findings of the jury, when viewed in the light of the evidence, show conclusively that appellees received double damages for the taking of their springs, that the evidence is insufficient to support the jury's answers to special issues 1, 2 and 3, and that the answers to special issues 1, 2 and 3 are against the great weight and preponderance of the credible evidence in the case.

Appellees, members of the Stinson family, owned approximately 71 acres of land, about 2 miles west of Mt. Pleasant in Titus County, Texas, on the north side of Highway 67. There are two houses on the tract, one large brick house occupied by the mother of Joyce Stinson and a frame house occupied by Joyce Stinson. Stinson is a cattle dealer, owning an interest in a livestock auction business in Mt. Pleasant. In addition to two homes on the tract, and garden, there were two barns, and the 71 acre tract was cut up by fences into several pastures. Stinson would put different classes of cattle in the various pastures for the purpose of showing them to buyers. In one he may have had dairy cows, in another beef cows, in another heifers, and in others various others. In the south-

east corner of this 71 acre tract were two very large, strong and valuable springs whose flow had never lessened throughout the years, even in the severest droughts. These springs furnished potable water of high quality for drinking and other domestic purposes for the two houses, for use on the yards, flowers, irrigation of the garden, and then water was piped into watering troughs in each of the pastures for use of the livestock. The supply from these springs was apparently unlimited and was the only available potable water on the 71 acres. It was good water that required no treatment or filtering for domestic use. The State took a 3.195 acre strip of land out of the southeast corner of the Stinson land with approximately 500 feet frontage on Highway 67, and took the two springs which flowed into a large cistern covered by a pump house, which were located on the 3.195 acre strip. The two Stinson residences, barns, garden, pastures, most of the water pipes, watering troughs and fenced pastures, which received their water supply from the springs taken were located off of the strip taken and were located on the remainder of the 71 acres not taken. The two springs taken were located close together, and both flowed by gravity into a large concrete cistern in which there was a pump and water was supplied, as above outlined, to the 71 acre farm. After the springs were extinguished by the State by filling them with clay dirt and when the Stinsons no longer had access to the springs and the waters thereof, Stinson drilled a well on the remainder not taken but was unable to get a satisfactory supply of water; and thereafter for domestic water he was reduced to hauling water at $6.00 per 1,000 gallons. For stock water he had to depend upon a small pool confined to one pasture, and a creek which dried up at times. It was shown that a dependable supply of good water was necessary for both domestic use and for Stinson to carry on his cattle operations, and without it the value of the remainder of the 71 acres not taken was considerably lessened.

■ Unquestionably the springs taken were very valuable and beneficial to the entire 71 acres. Of course, the springs increased the value of the 3.195 acre strip taken, on which they were located, but at the same time it can not be logically argued that the taking of the strip containing the springs, cistern and pump house did not damage the remainder of the 71 acre farm, which the springs served, as by the taking of the strip containing the springs and water supply the Stinson place was converted from a well-watered 71 acres to virtually a dry land 68 acre tract, and whose use and value has been drastically reduced.

In Greenman v. City of Fort Worth, Tex. Civ.App., 308 S.W.2d 553, wr. ref., n. r. e., (1957), the City of Fort Worth condemned a strip of land belonging to Greenman bordering the Trinity River, and after the taking Greenman's remaining land did not reach the river. Part of Greenman's farm was low land and could have been irrigated from the Trinity River and Greenman had irrigated 40 acres of his land and was thereby able to make valuable alfalfa crops on his land. The case was submitted on the Carpenter case issues and the landowner was awarded compensation for the tract taken and was also awarded damages to the remainder of his land not taken. In this case the court stated:

"Appellant had the right to 'inject' the element of value flowing from his irrigation rights. He acquired the right to use water from the river for irrigation purposes when he bought the land. It is a vested right. Motl v. Boyd, 116 Tex. 82, 286 S.W. 458; Chicago, R. I. & G. Ry. Co. v. Tarrant County Water Control & Improvement Dist. No. 1, 123 Tex. 432, 73 S.W.2d 55. Riparian rights are superior to any rights of appropriation conferred by statute. 44 Tex.Jur., p. 44, sec. 30. They constitute property, and cannot be taken from the owner by condemnation without payment of just compensation. 44 Tex.Jur., p. 47, sec. 34. Such rights are not unlimited, but they are substantial. Appellant was entitled to take water from the river as a matter of right and not as a matter of favor. The value of this property right was as material as any other element of value."

In Hibbets v. Johnson, Tex.Civ.App., 342 S.W.2d 642 (1961) (reversed on other matters Johnson v. Court of Civil Appeals, 162 Tex. 613, 350 S.W.2d 330), Hibbets owned 200 acres which were irrigated by one water well. The State condemned 8.24 acres, which included the well. The case was submitted upon the Carpenter case issues and the jury by its answers found the value of the 8.24 acre strip taken and also found the remainder to be damaged. The Court of Civil Appeals stated in part as follows:

"It was not the building of the road that affected the damages to the remaining 191.7 acres; it was the taking of an irrigation well upon the 8.24 acres which was used to irrigate all the land. When the 8.24 acres containing the irrigation well was condemned, the 191.7 acres was reduced to a dry land farm and consequently damaged the value. No one can reasonably contend that the taking of the irrigation well, thereby making the remaining 191.7 acres dry land instead of irrigated land, would not damage the 191.7 acres."

While the above quoted portion of the opinion of the Court of Civil Appeals is dicta we are of the view that it is a logical and correct statement.

The special issues submitted in this cause were framed in accordance with the suggestions made in the Carpenter case. No objections were made by the State to the value evidence offered by appellees on the ground that the questions asked were not in the precise language of the Carpenter case issues. We find that the evidence as to values was sufficiently developed. The fact that the jury awarded damages for the part taken (which included the springs) and also awarded damages to the remaining 68 acres which were served by the springs,

does not necessarily mean that the jury's verdict awarded double damages to appellees. The presumption prevails that the jury observed the court's charge unless the contrary appears. We do not agree with the State that the record conclusively shows that appellees received double damages for the springs taken. Appellant's 2nd point is overruled.

■ We also hold that the evidence is sufficient to support the findings of the jury to special issues 1, 2 and 3. Also after carefully considering the entire record in this cause in the light of the rules enunciated in the case of In Re: King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1952), we further hold that the jury's findings to special issues 1, 2 and 3 are not so contrary to the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. Appellant's 4th point is overruled.

■ We further hold that the trial court was correct in its ruling that the State's appraisal witnesses should not be permitted to testify concerning what certain landowners in the area near the Stinson land told them about the cost, depth, supply of water, kind of water, and other facts relative to water wells in the area, as such was hearsay evidence.

The two expert appraisal witnesses of the State admitted that they were not well drillers and had no personal knowledge of the sub-surface water conditions in the area of the lands in question; and that their opinion as to whether water would be available was based solely upon what someone had told them. The State did not attempt to bring in the witnesses living in the area who purportedly had the information which the State's expert witnesses attempted to bring in by hearsay.

The State relies upon State v. Oakley, 163 Tex. 463, 356 S.W.2d 909 (1962) for admission of the hearsay evidence in question. The gist of the narrow question before the Supreme Court in the Oakley case is stated in the following excerpt from the Oakley case at p. 911:

"The question before us is narrowed to that of the admissibility of the testimony of the expert witness concerning sales of which he did not have personal knowledge, and which was offered for the limited purpose we have noted, since neither the qualifications of the expert witness nor the comparability of the sales to which he testified are challenged."

In the case at bar, the State's expert witnesses had no personal knowledge of the sub-surface water conditions in the area, nor the cost of drilling water wells, and they were not qualified by education and experience as geologists or experts on water sands and water well drilling so as to render an opinion on the availability of water in the area or the cost of drilling wells or the depth thereof.

The State's expert witnesses were permitted by the trial court to fully testify about sales in the area that were considered comparable to the Stinson lands and the hearsay evidence in this respect was not objected to by appellees. The hearsay evidence offered by the expert witnesses relative to what other people in the area would say about water wells also did not involve any lands which were cited as comparable sales. Clearly the proffered hearsay evidence in question was not offered to show comparable value with other tracts that had been sold in the area.

The Oakley case, while permitting a real estate appraisal expert witness to testify from hearsay as to comparable sales for the limited purpose stated in the opinion, is not authority for the proposition advanced here by the State. Certainly a real estate appraisal expert should not ipso facto (without any other qualification) be deemed a geologist or water well expert and should not be permitted to testify as to hearsay statements made to him relative to water

sands, water well drilling, depth and costs of water well drilling. Appellant's third point is overruled.

The judgment of the trial court is affirmed.