The STATE NATIONAL BANK OF EL PASO, Texas, Appellant,

v.

MARGARET'S, a corporation, Appellee.

No. 5722.

Court of Civil Appeals of Texas.

El Paso.

July 7, 1965.

Rehearing Denied Sept. 15, 1965.

Kemp, Smith, Brown, Goggin & White, Raymond H. Marshall, El Paso, for appellant.

. Doyle H. Gaither, El Paso, for appellee.

CLAYTON, Justice.

This is an appeal from a judgment of the trial court, sitting without a jury, awarding plaintiff (appellee) judgment against appellant in the amount of $2,839.80. Appellee had received two checks in payment for merchandise from Dell City Gin Co., by Mrs. Gerene Carson, drawn on the gin company's account with the State National Bank of El Paso, Texas. The first check was in the amount of $2,839.80 dated January 9, 1960 and the second was in the amount of $1,272.65 dated, erroneously,

January 11, 1959 instead of January 11, 1960. Both checks were ultimately returned by the drawee bank, appellant here, to appellee with a sticker attached to each indicating that each was drawn against "insufficient funds". The first check had been deposited by appellee in its account with a Lubbock, Texas bank and by that bank forwarded to appellant through the Federal Reserve system. It was received by appellant on January 13, 1960. At that time the maker, Dell City Gin Co., had a balance of $1,802.12 in the appellant bank, but appellant paid the check, creating thereby an overdraft in drawer's account of $1,037.68 as of January 15, 1960. On January 18th, after the check was paid, Mr. E. C. Carson of the Dell City Gin Co. went into appellant bank and requested it to return the check "for collection" in an attempt to get Carson's money back on the check. On that day appellant placed the "insufficient funds" sticker on the check and returned it through channels via the Federal Reserve system. Appellant's letter of transmittal of January 18th described the check and gave as the reason for returning the check as "insufficient funds". No notice was sent to the Lubbock bank by appellant that the check had been paid and was being returned for refund. However, the Federal Reserve Bank, in its form letter transmitting the item to the Lubbock bank described it as "Item being returned on uncurrent basis for refund because of lateness in return" (not in accordance with banking regulations for refusal of current items under the provisions of Art. 342–704, Vernon's Tex.Rev.Civ.St.). The transmittal letter requests: "Obtain refund and advise us of credit" and refers to "our wire 1–19–60". This wire was not introduced in evidence and its contents are not clear. The check was charged back to appellee's account in Lubbock and credited to the Dell City Gin Co.'s account in appellant bank, thus bringing that account back up to the original balance of $1,802.12. However, in the meantime, and while this account was over-drawn, the second Dell City Gin Co.'s check in the amount of $1,272.65 was presented through channels to appellant bank on January 15th and was by it returned to the Lubbock bank as an unpaid item because of insufficient funds. The gin company's account was closed February 11, 1960.

In alternative pleadings, appellee alleged in its suit against appellant:

"XI.

"Plaintiff would further show, strictly in the alternative, that the Defendant THE STATE NATIONAL BANK OF EL PASO accepted said check in the sum of $2,839.80 and paid the same on January 13, 1960, thereby creating an overdraft in the account of the said DELL CITY GIN COMPANY. That thereafter, on January 18, 1960, said Defendant, at the request of Defendant E. C. CARSON, returned said check to American State Bank of Lubbock, Texas, as agent of Plaintiff, and represented that said check was being returned for 'Insufficient Funds' when in truth and in fact said check was being returned for the sole purpose of eliminating said overdraft, which fact was withheld from Plaintiff. That had THE STATE NATIONAL BANK OF EL PASO, TEXAS advised Plaintiff or its agents of the real reason for the return of said check it would not have been accepted; and that because of said misrepresentation Plaintiff has been damaged in the amount of said $2,839.80."

E. C. Carson, individually and doing business as Dell City Gin Co., was made a defendant in the suit and answered therein and agreed to a trial without the intervention of a jury, but thereafter made default and the matter was tried to the court without a jury. The court granted judgment to appellee against appellant in the amount of the first check, $2,839.80, and against E. C. Carson, d/b/a Dell City Gin Company in the amount of the second check, and judgment for appellant against Carson and

the gin company in the amount of the first check. Carson and the gin company did not appeal. The trial court made findings of fact and conclusions of law, in which, among other matters, it found that the Federal Reserve Bank, on instructions of the appellant, processed and returned the first check to the Lubbock bank for collection as an unpaid item for the reason of "insufficient funds"; that this check was not returned by appellant because of "insufficient funds" and the appellant knew that the check was being returned for reasons other than "insufficient funds"; that appellee would not have authorized reimbursement to appellant of the proceeds of the check had the fact been know that such check had been paid, but relied upon appellant's representation that the check was being returned as unpaid for the reason of "insufficient funds"; and that the withholding from appellee of the fact that appellant had paid the check was a material misrepresentation of fact. Certain additional findings were made at the request of appellant.

There appears to be no controversy in the briefs over appellant's Points of Error Nos. 1 and 2, and since they in no way alter the conclusion arrived at in this opinion, a discussion of these points is omitted. Points 3 and 4 complain of the trial court's error in finding that the manner in which appellant returned the first check amounted to a material misrepresentation of fact relied upon by appellee, such complaint being predicated on "no evidence", "against the overwhelming weight and preponderance of the evidence" and being "manifestly unjust to appellant".

In Nathan v. Hudson, 376 S.W. 2d 856, 862 (Tex.Civ.App., 1964; ref., n. r. e.), citing Brown v. Frontier Theatres, Inc., 369 S.W.2d 299, 301 (Tex.Sup.), it is stated: "The trial court's findings of fact and conclusions of law should be construed together and, if possible, be in harmony with the judgment and to support it; and in determining whether the findings

are supported by any evidence of probative value we should give credence only to the evidence favorable to the findings, disregarding all evidence to the contrary." We are further guided by the rules enunciated in the case of In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, 661 (1951), that in a "no evidence" point, we search for any evidence of probative value to support the finding, while in a point raising the fact issue of whether the finding is "against the great weight and preponderance of the evidence so as to be manifestly unjust", we consider *all* of the evidence, regardless of whether the record contains some "evidence of probative force" in support of the finding. See also State v. Stinson, 387 S.W.2d 448, 453 (Tex.Civ.App., 1965; ref., n. r. e.).

Bearing in mind the foregoing, we must examine the record to determine if the findings are supported by any evidence, or sufficient evidence, of probative value. The testimony of one T. C. Arnold, Cashier of the Federal Reserve Bank of El Paso, Texas, who was familiar with the foregoing transactions, reveals that, with regard to the first check, after it was presented to appellant bank on January 13th, it was returned by the latter to Federal Reserve Bank on January 18th, unpaid, making it an uncurrent item under existing delayed posting regulations. Arnold testifies: "This check was returned to us unpaid on January 18th * * * we telegraphed our head office in Dallas over our private wire system * * * this check reached Dallas on January 19, 1960 * * * Dallas sent it to American State Bank at Lubbock, Texas, on this form, stating that it was returned for the reason insufficient funds. Also stating that item(s) being returned on uncurrent basis for refund because of lateness in return, and request the American State Bank of Lubbock to obtain refund and advise. * * * The next thing we heard on the item we received a credit advise from the Federal Reserve Bank at Dallas, telling us that return item, *unpaid* check sent for refund by us on January 18th was being credited to our account for 28–39–80, repre-

senting the Dell City Gin Company check on the State National Bank. * * *" (Emphasis supplied.)

Mr. Dudley E. Wallen, Cashier of the appellant bank, testified as follows:

"Q  Then, what happened on January 18th, with reference to Mr. E. C. Carson; didn't he come into the bank on that day?

A  Yes, he came into the bank on the 18th day of January, after this check was paid on his account.

Q  And what did Mr. Carson request of the State National?

A  He wanted us to return it for collection for him.

Q  He wanted you to get his money back, didn't he?

A  Yes sir.  He wanted us to attempt to get his money back.

Q  And on January 18th, the State National Bank put the sticker on that check 'insufficient funds', and sent it back?

A  We did.

Q  And yet it had already been paid?

A  That's right.

Q  Well, now, can you explain to me how there could be insufficient funds on a check that had already been paid?

A  Well, for the simple reason that we created an overdraft by having paid this.

Q  And that was voluntary on the part of the State National?

A  That's right.

Q  But at no time did the State National notify anybody that this check was being returned for any-thing other than insufficient funds, did it?

A  No, we did not.  That is the reason it was returned.

Q  And you did not notify anybody that that check had been paid, and was being returned for collection?

A  What do you mean by notifying anybody?

Q  The American State Bank?

A  No, we did not.  They were notified through channels that this check was being returned, yes.

Q  For insufficient funds?

A  For insufficient funds.

Q  But never were they notified that the check had actually been paid?

A  No, we did not so notify them."

This testimony is in contradiction to the following quotation from appellant's answer:

"Further answering, and in the alternative, Defendant says that immediately after payment of the check in the amount of $2,839.80, this Defendant made it known to Plaintiff's agent, The American State Bank of Lubbock, Texas, that said check should not have been paid, and that the money should be refunded. * * *"

This answer also states: "After returning the money to this Defendant, Plaintiff stood by for some two years and allowed this Defendant to completely exhaust the account of DELL CITY GIN COMPANY before making any demands for payment." As before stated, the gin company's account was closed on February 11, 1960. This answer also admits that appellant bank, in sending the first check back "for collection", was "acting upon the instructions of Defendant, E. C. Carson."

Mr. J. T. Talkington, Secretary and Treasurer of the corporation that was doing

business as Margaret's, the appellee, testified on cross-examination:

"Q  I am getting around to the question, Mr. Talkington, why then did you wait some one year, three hundred and sixty-four days, to press your claim against the State National Bank?

A  For the simple reason that it was just a short time before that that I learned that there might be some other basis for this check having been returned.

Q  May I go a little further with that; what difference would it make to you, as far as the way the check was returned, as to whether or not you went after the bank at that point or waited some two years later to go after the bank?

A  Simply this, that if the check had actually been insufficient, or had been returned in the normal course of the business I felt that we had no recourse.  But when I learned that it was not returned in the normal course of business, and that there was sufficient funds in the bank which could have taken care of at least one of the checks, then I felt that we had an action against the State National."

and on re-direct:

"Q  Just briefly, Mr. Talkington, did you ever know that the first check, the twenty eight hundred dollar check, had actually been paid by the State National Bank?

A  Excuse me, did I ever know it?

Q  Or, let me rephrase that, do you know at this time?

A  Yes sir.

Q  When did you learn that that check had been actually paid?

A  Shortly before this—now, I can't give you the exact date, but shortly before this suit was filed.

Q  So that from the time that the checks were returned to you as insufficient, until shortly before filing this suit, some two years later, you had no knowledge that the check had actually—that one check had actually been paid?

A  No, sir."

In its reply brief, appellant again asserts that, regarding the manner in which the first check was returned, there was no evidence to support the trial court's findings of material misrepresentation, and that such finding was against the overwhelming weight and preponderance of the evidence. It cites Panhandle & Santa Fe Ry. Co. v. O'Neal, 119 S.W.2d 1077, 1079 (Tex.Civ. App., 1938, err. ref.) as authority for the statement that to support a cause of action for fraud based upon false representations, the appellee must have shown that (1) the representation was false at the time it was made, (2) that the representation was as to a material fact, (3) that it was made with the intent to induce appellee to do or refrain from doing some act, (4) that it was relied upon by appellees, and (5) that damage or injury resulted; and that each of these elements must be established with a reasonable degree of certainty, and the absence of any one of them will prevent a recovery. The O'Neal case is cited in Klindworth v. O'Connor, 240 S.W.2d 470, 477 (Tex.Civ. App., 1951; ref., n. r. e.), which further states:

"* * * It has been said that '* * * fraud is so multiform as to admit of no rules or definitions, and hence equity leaves the way open to punish frauds and redress wrongs perpetrated by means of them in whatever form they may appear.'  Varner v. Carson, 59 Tex. 303, quoting Bigelow on Frauds, Judge Simpkins, Contracts of Sale, defines fraud: 'Fraud is an act or concealment involving a breach of legal

duty, trust or confidence justly reposed, and from which injury results to another, or by reason of which an undue and unconscientious advantage is taken of another.' "

Whether we rely upon definitions or basic principles of equity, we are met with the determination that the trial court did not err in its findings and conclusions, which we deem to be amply supported by the record as a whole. We accordingly overrule appellant's Points of Error 3 and 4. Appellee had a cross-point, predicated upon a reversal by this court of the trial court's judgment. Having treated all points, and finding no error, the judgment is affirmed and appellee's cross-point is immaterial.

Affirmed.